**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **MELTZER/AUSTIN RESTAURANT** | § | |
| **CORPORATION, et al.** | § | |
| | § | |
| **V.** | § | **A-11-CV-542-LY-AWA** |
| | § | |
| **BENIHANA NATIONAL CORP.,** | § | |

## ORDER

Before the Court are Plaintiffs' Motion and Supporting Memorandum to Compel Defendant Benihana National Corporation to Amend Its Initial Disclosures (Clerk's Doc. No. 84), Plaintiffs' Motion for Protective Order (Clerk's Doc. No. 87), Plaintiffs' Motion and Supporting Memorandum to Compel Defendant's Interrogatory Responses (Clerk's Doc. No. 88), Defendant's Response Memorandum in Opposition to Plaintiffs' Motions to Compel (Clerk's Doc. No. 96), and Plaintiffs' Reply to Defendant's Response (Clerk's Doc. No. 100). The District Court referred the above motions to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges (Clerk's Doc. Nos. 86, 89, and 93). The Court conducted a hearing on the motions on December 19, 2012.

### I. BACKGROUND

This case arises from a dispute between the franchisee-Plaintiffs ("Meltzer") and the franchisor-Defendant ("Benihana"). Prior to the events at issue in this case, Meltzer had been a successful Benihana franchisee for thirteen years. Meltzer opened his first Benihana restaurant in Austin in 1998 and a second restaurant in San Antonio in 2001. Meltzer's successful Benihana

franchises received several awards and recognition from Benihana over the years. Meltzer alleges that his relationship with Benihana changed following the death of its founder, Rocky Aoki, in 2008. Shortly after Aoki's death, Meltzer began to receive franchise violation notices from Benihana for items that had been previously approved.  According to Meltzer, he spent tens of thousands of dollars to bring his Benihana franchise restaurants into compliance in 2009.  In addition to these violations, Meltzer also asserts that Benihana made misrepresentations relating to a new franchise agreement between Meltzer and Benihana that led Meltzer to purchase property for a new Benihana franchise restaurant.

Meltzer's relationship with Benihana further deteriorated in November, 2010, when he received notices of default from Benihana with respect to his Austin and San Antonio restaurants, informing Meltzer that he had thirty days to correct the use of nonstandard and nonapproved menus and to remove the large exterior sign outside his restaurants.  However, Meltzer claims that the actions on which the notices of default were based had previously been approved by Benihana.  On June 23, 2011, Meltzer received written notice of termination from Benihana.  Meltzer's Austin restaurant closed on July 31, 2011, and his San Antonio restaurant on August 3, 2011.  Meltzer alleges that the improper termination of his Benihana franchises and closure of his Benihana restaurants caused him additional financial losses.

The current case is a consolidation of three separate cases, the first filed by Meltzer against Benihana in District Court in Travis County, Texas, in June, 2011, for breach of the parties' franchise agreements and fraud.  The second was filed by Benihana, also in June 2011, in federal court in the Southern District of Florida, alleging Meltzer had improperly used Benihana's trademarks and service marks in the operation of his Austin and San Antonio restaurants.  Benihana

2

removed Meltzer's Texas state court petition to this Court, and sought to transfer the case to the Southern District of Florida. Finally, the third case was filed by Meltzer in July 2011, in this Court, alleging fraud, negligent misrepresentation, and other causes of action relating to Meltzer's purchase of property for a new Benihana franchise. Benihana also sought to transfer this case to the Southern District of Florida, but on December 14, 2011, the Southern District of Florida judge transferred Benihana's suit to this district, and on February 3, 2012, Judge Yeakel consolidated all three cases into the instant action.

## II. ANALYSIS

**A.      Plaintiffs' Motion and Supporting Memorandum to Compel Defendant Benihana National Corporation to Amend Its Initial Disclosures (Clerk's Doc. No. 84)**

In this Motion, Meltzer seeks the Court's assistance to compel Benihana to amend its initial disclosures. Meltzer asserts that despite the complex and fact-intensive nature of this case, Benihana's initial disclosures amounted to less than four pages of substantive information. In particular, Meltzer criticizes Benihana for not mentioning key individuals in the litigation and not providing a straight response to the request for information regarding insurance coverage. *See* Clerk's Doc. No. 84. Benihana responds that its initial disclosures were adequate and satisfied its obligations under Rule 26 of the Federal Rules of Civil Procedure. Benihana notes that both Rules 26(a)(1)(A)(i) and (ii) require the disclosure of individuals and documents that *the disclosing party* "may use to support its claims or defenses," and asserts that it has disclosed all of those individuals and documents. *See* Clerk's Doc. No. 96 at 2–5. In response, Meltzer alleges that Benihana has "failed to comply with the purpose of FED R. CIV. P. 26(a), which is to accelerate the exchange of basic information and facilitate preparation for trial or settlement." *See* Clerk's Doc. No. 100 at 2.

3

Alternatively, Meltzer argues that Benihana should be limited to calling or offering at trial only the witnesses and documents listed in its initial disclosures.  *Id.*

Meltzer is seeking to apply Rule 26 more broadly than it is written.  Rule  26(a)(1) requires parties to make initial disclosures regarding individuals and documents that "the *disclosing party* may use to support its claims or defenses . . . ."  *See, e.g.*, FED. R. CIV. P. 26(a)(1)(A)(i); FED. R. CIV. P. 26(a)(1)(A)(ii) (emphasis added).  The plain, unambiguous language of the rule makes it clear that such disclosures are based on what the *disclosing party* believes it will use to support its claims or defenses at trial, not what the *opposing party* believes to be relevant.  Thus, while Meltzer believes that three and a half pages of initial disclosures were inadequate, this does not mean that Benihana's list of what it anticipates it will use at trial to support its claims or defenses is incorrect.  Through its filings and arguments at the hearing, Benihana has represented to the Court that its disclosures were completed in good faith.  The Court takes Benihana at its word and has seen no evidence that Benihana's disclosures were not made in good faith.  Rather, what is apparent is that Meltzer has a very different view of what this case is about, and what is therefore relevant evidence.

Furthermore, to the extent Meltzer seeks to limit Benihana's witnesses or documents it may use at trial, Meltzer's request will also be denied.  The Federal Rules clearly contemplate that Parties will supplement their initial disclosures as the case moves forward.  For example, FED. R. CIV. P. 26(e)(1) provides:

> A party who has made a disclosure under Rule 26(a) . . . *must* supplement or correct its disclosure or response:
>
>> (A) In a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) As ordered by the court.

Fed. R. Civ. P. 26(e)(1) (emphasis added).  It is plainly obvious that parties are not limited to their initial disclosures and may supplement their disclosures.  As this case progresses, and the scope of the issues for trial becomes more defined, if Benihana intends to use additional individuals or documents to support its claims or defenses at trial, it has a duty to supplement its initial disclosures.

Finally, as to the issue regarding any relevant insurance, the Court is at a loss to understand what Meltzer is complaining about.  Benihana's answer states unequivocally that it is unaware of any insurance policy that would apply to these disputes.  That is not a cagey answer, and complies with the obligations imposed by Rule 26.

**B.    Plaintiffs' Motion for Protective Order (Clerk's Doc. No. 87)**

Meltzer also requests the Court to enter the standard form Confidentiality and Protective Order provided by the Western District's Local Rules.  Meltzer alleges that repeated attempts to agree on a stipulated protective order in this case have been unsuccessful and accuses Benihana of "foot dragging."  Clerk's Doc. No. 87 at 1.  Benihana responds that the problem derives from miscommunication between Meltzer's Austin and Houston attorneys and is not the result of Benihana's actions.  Clerk's Doc. No. 96.

Although it is not entirely clear what all of the areas of disagreement on the form of a protective order are, it appears that the main area of dispute is Paragraph 17 of Benihana's proposed Protective Order, which (in summary) directs Meltzer not to disclose any documents to any third parties, including other Benihana franchisees.  Paragraph 17 also prohibits the usage of any documents identified as "Confidential" in other litigation or disputes, now or in the future.  Clerk's Doc. No. 87, Exh. 8 at ¶ 17.  At the hearing, Benihana was unable to articulate any factual reasons

why this paragraph is needed in this case.  There is no evidence, for example, of Meltzer improperly

using Benihana's documents, or soliciting others to join in his suit.  Furthermore, the standard form

Confidentiality and Protective Order for the Western District of Texas already contains language

which addresses Benihana's concern.  In Section 4, the form order provides:

> All Classified Information provided by any party or nonparty in the course of this litigation *shall be used solely for the purpose of preparation, trial, and appeal of this litigation* and for no other purpose, and *shall not be disclosed* except in accordance with the terms hereof.

*See* Western District of Texas Protective Order, *available at* http://www.txwd.uscourts.gov

(emphasis added).   Benihana has proffered no reason why the Western District of Texas'

Confidentiality and Protective Order would be insufficient to serve its needs.  Accordingly, the Court

will enter the standard form protective order for this case.

**C.      Plaintiffs' Motion and Supporting Memorandum to Compel Defendant's Interrogatory Responses (Clerk's Doc. No. 88)**

In this Motion, Meltzer seeks to compel Benihana to amend its interrogatory responses,

which Meltzer believes are "woefully inadequate."  More specifically, Meltzer asserts that Benihana

has made improper general, boilerplate objections to the interrogatories and cites problems with

Benihana's responses to Interrogatories 1, 2, 5, 6, 7, 8, and 9.  Clerk's Doc. No. 88.  The Court will

address the specific interrogatories in turn.

**1.      Interrogatory No. 1: Identify all persons who you believe have knowledge of relevant facts and identify the issues upon which you believe they have knowledge.**

**Interrogatory No. 2: If Benihana Corporation is a partner, a partnership, or a subsidiary or affiliate of a publicly owned corporation that has a financial interest in the outcome of this lawsuit, list the identity of the parent corporation, affiliate, partner, or partnership and the relationship between it and the Meltzer Parties.  If there is a publicly owned corporation or a holding company not a**

6

> party to the case that has a financial interest in the outcome, list the identity of
> such corporation and the nature of the financial interest.

Benihana responded to Interrogatory No. 1 by providing a set of individuals, along with their job titles and a short description of the information each individual may possess. Benihana answered "none" to Interrogatory No. 2. Clerk's Doc. No. 88, Exh. 2. Meltzer alleges that Benihana's responses to both interrogatories are inadequate, noting that given the complex and lengthy history of this case, it is "hard to imagine" Benihana's answers were so short. Clerk's Doc. No. 88 at 3–4.

Once again, Meltzer is basing its view of Benihana's responses on Meltzer's expansive view of the issues presented by this case. Interrogatory No. 1 only requests information from Benihana regarding individuals that *Benihana* believes would have knowledge of the relevant facts. Whether or not Meltzer believes that more individuals have knowledge of relevant facts is not the measure of whether Benihana has sufficiently responded to the interrogatory. With regard to Interrogatory No. 2, Benihana points out that it is a privately held corporation, and not an affiliate or subsidiary of a publicly-held corporation. and thus it has correctly answered the interrogatory. Meltzer's objections to this response are that "we suspect this is not accurate," and points to what was then an impending acquisition of Benihana reported in financial news outlets in August, 2012. But if in fact Benihana was acquired, that changes nothing. Benihana is the party being sued, not its shareholders, and a change in the shareholder group does not change the answer to the interrogatory. Rather, the plain language of Meltzer's own question demanded an affirmative answer only if Benihana was a partner, affiliate or subsidiary of a publicly traded corporation, or if a publicly-traded corporation had a financial stake in the case. Nothing Meltzer has submitted suggests otherwise. In short, Benihana

has represented that its responses to Meltzer's first two interrogatories are truthful and made in good

faith, and Meltzer has presented no evidence demonstrating the contrary.

Moreover, as with initial disclosures, FED. R. CIV. P. 26 contemplates the need for parties to

supplement their interrogatory responses.  *See* FED. R. CIV. P. 26(e).  Should Benihana become aware

of more relevant individuals or information in the future, it will have a duty to supplement its

interrogatory responses.  At this stage in the dispute, Benihana's responses are sufficient.

> **2.**      **Interrogatory No. 5: For each of the violations that you allege were grounds for terminating the Meltzer restaurant franchises in Austin and San Antonio, please identify each time you found a similar violation in any other Benihana restaurant (including both franchise and corporate restaurants) in the county. For each violation occurrence that you identify, please state the date, restaurant location, whether it is a franchise or corporate restaurant, and the resulting actions.**
>
> **Interrogatory No. 6: List all franchisees that have been required to provide monthly financials from January of 2009 to the present (i.e., not just monthly profit and loss statements).**
>
> **Interrogatory No. 7: What are the royalty payment percentages, actual payments and dates on the agreements (and any amendments thereto) for each of the Benihana restaurants?**

Interrogatories No. 5, No. 6, and No. 7 request information on other franchisees.  Benihana

objects to these interrogatories on the basis that information on other franchisees is irrelevant to the

dispute between Meltzer and Benihana.  Clerk's Doc. No. 88, Exh. 2.  Meltzer believes the evidence

regarding other franchisees is critical to show that Benihana treated Meltzer differently from other

franchisees.  According to Meltzer, the contracts between Meltzer and Benihana are governed by

New York law and therefore contain an implied covenant of good faith and fair dealing.  Meltzer

contends that Benihana's differing treatment of Meltzer would be a breach of this implied covenant

and the evidence is therefore relevant to his claims.  Clerk's Doc. No. 88 at 5–6.  In its Response,

Benihana asserts that there is no general duty to treat franchisees equally, and any information regarding other franchisees is therefore irrelevant to this case.  Clerk's Doc. No. 96 at 8–11.

The dispute at the foundation of this issue is whether the contracts between Benihana and Meltzer are governed by New York or Texas law.  Meltzer asserts that the license and franchise agreements are governed by New York law, whereas Benihana claims Texas law applies.  *See* Clerk's Doc. No. 78, ¶ 131; Clerk's Doc. No. 81 at 7.  At issue is the interpretation of Paragraph 15.7 of the License Agreement and Paragraph 16.7 of the Franchise Agreement, both of which contain the following, awkwardly worded provision:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York, applicable to agreements made and to be performed solely within such state.

Clerk's Doc. No. 78, Exh. 1 and Exh. 2.  Benihana argues that this choice of law provision is only "applicable to Agreements made and to be performed solely within each state," and thus New York law does not apply to the agreements between Meltzer and Benihana, as the restaurants at issue in their agreements were to be operated entirely within Texas.  Clerk's Doc. No. 81 at 7.  Meltzer, however, asserts that the provision means that the parties were agreeing that whatever New York law "applicable to agreements made and to be performed solely within such state" is, that is the law governing their agreements.  Clerk's Doc. No. 83 at 7.

Benihana further contends that even if New York law is the governing law, the New York implied duty of good faith and fair dealing only extends to the specific obligations the contracts imposed on Benihana, and does not create additional, independent duties.  Clerk's Doc. No. 102. Under this reading of New York law, information regarding a franchisor's treatment of other franchisees would not be relevant because the duty does not include an obligation to treat all

9

franchisees in a similar manner.  *Id.*  Meltzer disagrees, and contends that New York construes the implied duty of good faith and fair dealing broadly, and as encompassing a duty to treat all franchisees fairly.  Clerk's Doc. No. 103.  In its most recent brief, Benihana appears to go even further, arguing that Meltzer cannot maintain a cause of action for breach of the implied duty of good faith and fair dealing under New York law at all.  Clerk's Doc. No. 102.

A decision on whether the claims in this case are governed by New York or Texas law—and should New York law govern, the scope of the implied duty of good faith and fair dealing—has significant implications for this case, beyond simply the scope of discovery.  Both parties raise this issue in briefing on Benihana's Motion to Dismiss Meltzer's Fourth Amended Complaint (Clerk's Doc. No. 81), which is pending before Judge Yeakel.  Further, Benihana's supplemental briefing in this motion (Clerk's Doc. No. 102) raises the argument that no such cause of action is even available here.  Because a decision on these issues would directly impact the dispositive motions pending before Judge Yeakel, the undersigned declines to make a ruling on them at this time, and will defer to Judge Yeakel's resolution of those questions.  In light of this, and given the breadth of Meltzer's discovery requests relating to other franchisees, the Court  at this time will deny Meltzer's request to engage in wide-ranging discovery on how other franchisees have been treated by Benihana.  If Judge Yeakel's ruling on the motion to dismiss makes Benihana's treatment of other franchisees relevant to the claims in this case, then Meltzer is of course permitted at that time to conduct discovery on those issues.[1]

---

[1]It is incumbent on Meltzer to initiate discovery on these issues if the ruling on the motion to dismiss makes the issues relevant, and he should not await any ruling from the Court to do so.

3.      **Interrogatory No. 8: Describe the events and reasoning behind Joel Schwartz's departure from his position at Benihana Corporation.**

Benihana objects to Interrogatory No. 8 on the basis that it is irrelevant to the issues between Meltzer and Benihana in the instant case.  As support, Benihana highlights that Joel Schwartz is only briefly mentioned in Meltzer's Fourth Amended Complaint.  Clerk's Doc. No. 96 at 11.  In response, Meltzer alleges that Schwartz is integral to this case as he was involved in the power struggle for control of Benihana with Mr. Richard Stockinger, who Meltzer deems responsible for many of Benihana's bad actions toward him.  Clerk's Doc. No. 88 at 6–7.

Meltzer has failed to explain how the relationship between Schwartz and Stockinger is relevant to the dispute between Meltzer and Benihana.  Whether Schwartz was forced to resign and the issues surrounding Schwartz's departure from Benihana are irrelevant to the instant case.  Meltzer's allegation that Schwartz has intimate knowledge of the facts at issue in this case appears to derive from multiple levels of speculation.  For example, the Court would have to assume that Stockinger disclosed to Schwartz his intent to target Meltzer's franchises, an assumption this Court is unwilling to make based purely on Meltzer's assertions.  Furthermore, at the hearing, Meltzer did not present any evidence to support his speculation.  The Court will therefore deny the motion to compel a response to this question.

4.      **Interrogatory No. 9: What factors do you consider in rating successful franchises and corporate stores?**

In response to Interrogatory 9, Benihana states that the terms "factors" and "successful" are not defined and inherently subjective.  Additionally, Benihana also objects that to the extent Meltzer seeks this information with regard to other franchisees, such information is irrelevant and confidential.  Clerk's Doc. No. 88, Exh. 2.  Meltzer claims Benihana refusal to provide an answer

is improper.  Meltzer believes that many of the violations cited by Benihana for termination of Meltzer's franchise agreement were either fabricated or not enforced against other restaurants. Clerk's Doc. No. 88 at 7.

At the hearing, Benihana represented to the Court that it had no objection to providing information regarding its general criteria in determining whether a franchisee is successful.  It did object to providing specific information on other franchisees.  Considering the parties' representations, the Court will GRANT Meltzer's motion to compel as to the general criteria used by Benihana in rating their franchisees and ORDERS Benihana to respond to the interrogatory to that extent.  However, in accordance with the previous discussion on Interrogatories No. 5, No. 6, and No. 7, to the extent this question seeks information regarding the performance of specific franchisees other than Meltzer, the Court will deny the motion to compel on this interrogatory.

### III. CONCLUSION

In summary, Meltzer's Motion to Compel Defendant Benihana National Corporation to Amend Its Initial Disclosures (Clerk's Doc. No. 84) is DENIED.  Meltzer's Motion for Protective Order (Clerk's Doc. No. 87) is GRANTED, and the Court has entered a protective order in the form called for in the Local Rules. Finally, Meltzer's Motion and Supporting Memorandum to Compel Defendant's Interrogatory Responses (Clerk's Doc. No. 88) is GRANTED IN PART AND DENIED IN PART as set forth above.  Benihana shall serve responses ordered no later than January 18, 2013.

SIGNED this 4th day of January, 2013.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE