IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

MELTZER/AUSTIN RESTAURANT          §
CORPORATION, et al.                §
                                   §
V.                                 §          A-11-CV-542-LY-AWA
                                   §
BENIHANA NATIONAL CORP.            §

## ORDER

Before the Court are Plaintiffs' Second Motion to Compel Depositions (Dkt. No. 116);

Defendant's Response in Opposition to Motion (Dkt. No. 127); and Plaintiffs' Reply (Dkt. No. 130).

Also before the Court are Plaintiffs' Second Motion to Compel Production Responses (Dkt. No.

120); Defendant's Response Memorandum in Opposition to Motion (Dkt. No. 131); Plaintiffs' Reply

(Dkt. No. 132); and Plaintiffs' Sur-Reply (Dkt. No. 136).   The District Court referred the above

motions to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. §636(b)(1)(A),

FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District

Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States

Magistrate Judges.

The Court conducted a hearing on the above-motions on March 7, 2013.  After reviewing the

Parties' arguments at the hearing, the Parties' briefs, the relevant case law, as well as the entire case

file, the undersigned issues the following order.

## I.  BACKGROUND

The relevant facts in this case were detailed in a previous order.  *See* Dkt. No. 108.  Meltzer's

current pending motions concerning discovery are the fifth and sixth discovery-related motions in

this case.  *See* Dkt. Nos. 84, 88, 105, and 111.  Despite previous encouragement to resolve their

discovery issues without the intervention of the Court, the Parties have been unable to do so and still have the following unresolved discovery disputes.

## II.  ANALYSIS

**A.      Plaintiffs' Second Motion to Compel Depositions (Dkt. No. 116)**

In this Motion, Meltzer seeks the Court's assistance to compel Benihana to produce two of its employees for depositions.  According to Meltzer, Benihana has failed to respond promptly to Meltzer's inquiries regarding these depositions, thereby continuing to delay discovery in this suit. Meltzer notes that this delay has occurred even after the undersigned ordered the Parties to cooperate in completing depositions.  Benihana asserts that it has provided specific dates to Meltzer regarding depositions and that Meltzer's characterizations of Benihana's uncooperative behavior is unwarranted.

At the hearing, the Parties represented to the Court that they had come to an agreement regarding the scheduling of depositions and recited their agreement for the record.  As such, there is no need for the Court to intervene on this matter.  Given the Parties' agreement, the Court will DENY AS MOOT Meltzer's Second Motion to Compel Depositions (Dkt. No. 116).  However, the Parties are warned that in the event further issues arise concerning the taking or scheduling of depositions, the Court will impose sanctions on the responsible party or parties.

**B.      Plaintiffs' Second Motion and Supporting Memorandum to Compel Production Responses (Dkt. No. 120)**

Meltzer also requests the Court to compel Benihana to produce documents responsive to Meltzer's requests for production.  Meltzer states that repeated attempts to obtain additional production from Benihana have been unsuccessful.  More specifically, Meltzer asserts that Benihana

has provided inadequate discovery responses to Meltzer's requests involving (1) discovery related to Benihana's franchise agreements, including standard agreements as well as specific agreements; (2) discovery related to Benihana's disparate treatment of Meltzer; (3) discovery related to Meltzer's performance in comparison to other Benihana franchisees and corporate stores; and (4) miscellaneous discovery matters, including a newsletter published by Benihana, communications regarding the changes Benihana considered and wanted for the new Austin location, and oral or written statements made by Benihana regarding the instant suit.  Associated with each group of disputed recovery requests are numerous specific requests for production.  As such, the Court will address the specific requests for production in turn.

1.     **Discovery Related to Benihana's Franchise Agreements**

**Request for Production No. 1: Produce your current Standard License Agreement.**

**Request for Production No. 2: Produce the Standard License Agreement that you were using in December 1999.**

**Request for Production No. 3: Produce the Standard License Agreement that you were using in February of 2000.**

**Request for Production No. 4: Produce all revisions (including drafts) to your Standard License Agreement during the last 6 years.**

**Request for Production No. 5: Produce all documents regarding changes in your Standard License Agreement during the last 6 years.**

**Request for Production No. 6: Produce a copy of all franchise and franchise renewal agreements that you have with the Benihana franchisee store in Key West, Florida.**

**Request for Production No. 7: Produce a copy of all franchise and franchise renewal agreements that you have with the Benihana franchisee store in Las Vegas, Nevada.**

3

**Request for Production No. 8: Produce all franchise license agreements (including option renewals, amendments, addendums, and so forth) that you have executed with franchisees during the last 10 years.**

In this set of requests for production, Meltzer seeks discovery related to Benihana's franchise agreements, including its standard franchise agreement as well as the specific agreements with the Benihana franchisees in Key West, Florida, and Las Vegas, Nevada. Meltzer contends that these requests are relevant to the current case because they will shed light on whether Benihana "impos[ed] certain requirements and demands upon [Meltzer] that were not required of other franchisees." Dkt. No. 120, ¶ 33. Additionally, Meltzer argues that these franchise agreements will help show whether Benihana "attempted to force [Meltzer] to accept a dramatically less favorable franchise agreement than what was previously agreed upon by the parties." Dkt. No. 120, ¶ 36. Benihana asserts that it has produced all relevant and responsive documents.

As to Request for Production No. 1, Benihana represented at the hearing that it had produced Benihana's standard license agreements for 2010 and 2011. Meltzer agreed that these agreements had been produced, but noted that they had only been produced recently. In any event, there did not appear to be any remaining dispute regarding Meltzer's Request for Production No. 1. Thus, the Court will DENY this request as moot.

After reviewing the Parties' arguments at the hearing and in their filings, the Court finds Meltzer's arguments as to the relevance of the remaining disputed discovery requests in this group to be weak. This case arises from the deteriorating relationship between Meltzer and Benihana that occurred following the death of Benihana's founder, Rocky Aoki, in 2008. In particular, Meltzer alleges that he began receiving franchise-violation notices from Benihana in the summer and fall of 2009 relating to aspects of his Austin and San Antonio Benihana franchises that had previously been

4

approved. Additionally, Meltzer claims that Benihana made numerous misrepresentations regarding its intent to enter into a new franchise agreement with Meltzer during the first months of 2010, which led Meltzer to make significant investments for opening a new Benihana franchise in Austin.

Although all information sought in discovery need not be admissible at trial, it must appear to be "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Furthermore, the information requested should be relevant to the claims in the case. *Id.* Meltzer does not claim that Benihana breached any duty or improperly treated Meltzer when his first two Benihana franchises were opened in 1998 and 2001. There is also no allegation that Benihana made misrepresentations to Meltzer regarding a new Austin Benihana franchise prior to December, 2009.[1] Thus, although Meltzer and Benihana had a lengthy working relationship dating back to 1998, all of the events giving rise to the current suit occurred in 2009 or later. As such, Benihana's standard license agreements from December, 1999, and February, 2000, are not relevant to the current suit because none of the claims Meltzer alleges are based on events which occurred in 1999 or 2000. Thus, the Court will DENY Meltzer's Motion to Compel as to his Requests for Production Nos. 2 and 3.

Similarly, any revisions or changes made by Benihana to its standard license agreement during the last six years—Meltzer's Requests for Production Nos. 4 and 5—are also not relevant to

---

[1] Meltzer presents conflicting accounts of precisely when Meltzer and Benihana began negotiations for a new Benihana franchise in Austin. At the hearing, Meltzer stated that Benihana told him that he could have a deal "as good as Key West" in December, 2009, and January, 2010. However, in Meltzer's Fourth Amended Complaint, he asserts that he did not begin conferring with Benihana regarding the potential for a new Austin Benihana franchise until January, 2010. *See* Dkt. No. 78, ¶ 68. Even taking into account Meltzer's representations at the hearing, the earliest time at which negotiations for the new Austin Benihana location could have begun was in December, 2009. Thus, Meltzer's requests for Benihana's standard license agreements from 1999 and 2000 are still outside the relevant time frame for this suit.

the instant case.  For example, whether Benihana made any changes to its standard license agreement in 2008 has no bearing on whether it made any misrepresentations to Meltzer in December, 2009. To the extent Meltzer claims that Benihana made misrepresentations that Meltzer's potential new franchise agreement was supposed to contain more favorable terms than the standard license agreement, those claims may be analyzed as compared to Benihana's standard license agreements in 2010 and 2011, which have already been produced.  Meltzer did not provide any additional reasons at the hearing to suggest that changes to Benihana's standard license agreements in the last six years would be relevant.  Thus, the Court will DENY Meltzer's Motion to Compel with regard to his Requests for Production Nos. 4 and 5.

Turning to the requests which seek Benihana's license agreements with specific franchisees, the Court finds Meltzer's requests to be too broad in scope.  According to Meltzer, these agreements, particularly Benihana's license agreements with the franchises in Key West and Las Vegas, are relevant because they will show that Benihana made misrepresentations to Meltzer during the course of the Parties' negotiations for a new Austin Benihana franchise.  At the hearing, Meltzer stated that Benihana specifically told him that his new franchise agreement would be as good as the Key West, Florida, and Las Vegas, Nevada, franchises.  These representations led Meltzer to make significant investments in starting a new franchise location in Austin.  Aside from these two franchises, Meltzer does not allege that Benihana made misrepresentations regarding his new franchise agreement as compared to any other Benihana franchisee.  Thus, Meltzer's request seeking *all* franchise license agreements executed by Benihana over the last ten years is impermissibly broad in scope. Consequently, the Court will DENY Meltzer's Request for Production No. 8.

Finally, the requests for the franchise agreements of the Key West and Las Vegas franchises must be limited to a reasonable time frame.  The Key West and Las Vegas franchise agreements before and after the time period when Benihana allegedly made misrepresentations to Meltzer are not relevant to the current suit and not reasonably calculated to lead to the discovery of admissible evidence.  For example, any changes made to Benihana's franchise agreements with the Key West or Las Vegas franchises in 2012 would not be relevant because those agreements are outside the time frame during which Meltzer alleges Benihana made misrepresentations to him.  At the hearing, Meltzer stated that Benihana told him that his franchise agreement for the new Austin location would be as good as the Key West agreement in December, 2009, and in January, 2010.  Meltzer further noted that the representations regarding the Las Vegas franchise were made in February, 2010.  Thus, the Court will GRANT IN PART and DENY IN PART Meltzer's Motion to Compel in relation to Requests for Production Nos. 6 and 7.  The Court hereby ORDERS Benihana to produce the executed franchise agreement for the Key West franchise during the time period of December 1, 2009, until January 31, 2010.  The Court further ORDERS Benihana to produce the executed franchise agreement for the Las Vegas franchise during the time period of February 1, 2010, until February 28, 2010.

In summary, the Court DENIES AS MOOT Meltzer's Motion to Compel as it pertains to Request for Production No. 1.  Additionally, the Court DENIES Meltzer's Motion to Compel in relation to Requests for Production Nos. 2, 3, 4, 5, and 8.  Finally, the Court GRANTS IN PART and DENIES IN PART Meltzer's Motion to Compel with regard to Requests for Production Nos. 6 and 7.

2.      **Discovery Related to Benihana's Disparate Treatment of Meltzer[2]**

**Request for Production No. 9: Produce all inventories of Austin and San Antonio Benihana restaurant dishes and other dinnerware that were done by or for Benihana Corporation.**

**Request for Production No. 11: Produce all notes, emails, etc. regarding changes in your Standard Dinnerware.**

**Request for Production No. 12: Produce all Benihana Corporation teppanyaki restaurant design models for the past ten years.**

**Request for Production No. 13: Produce all copies of the Benihana teppanyaki restaurant standards, including, but not limited to, all standards that you claim were violated by any of the Meltzer Parties.**

**Request for Production No. 14: Produce all documents regarding the decision-making process for and resulting changes in the Benihana food specs.**

**Request for Production No. 15: Produce the operations manual furnished to each Benihana franchisee and present.**

**Request for Production No. 16: Produce all documents regarding any potential expansion of your franchisee system or development or changes in your franchisee system.**

This set of requests concerns documents related to the termination of Meltzer's Austin and San Antonio franchises.  Generally, these requests ask for information regarding Benihana's restaurant standards, which Benihana claims were violated by Meltzer prior to his termination as a Benihana franchisee.  Meltzer asserts that production of documents responsive to these requests are

---

[2] Meltzer's Motion to Compel lists Request for Production No. 10, which seeks "all documents regarding the requirement to purchase plates and other dinnerware from a specific company and the enforcement of that requirement across the Benihana franchises and corporate restaurants," along with this second group of requests for production.  Dkt. No. 120 at 14–17.  However, only Request for Production No. 10 appears to seek information on other Benihana restaurants.  Thus, the Court will consider Request for Production No. 10 in Section B.3, where the Court evaluates whether information regarding other Benihana restaurants, including franchisee and corporate stores, is discoverable.

needed because one of Meltzer's primary contentions is that Benihana "engaged in a course of conduct that resulted in the disparate treatment of [Meltzer] compared to other franchisees." Dkt. No. 120, ¶ 41. At the hearing, Meltzer noted that he simply wants to know the standards, including any changes to these standards, by which he was being evaluated. Generally, Benihana objects to the production of these documents based on relevance and argues that the requests are also impermissibly broad in scope and time.

As an initial matter, the Court notes that although Meltzer claims this set of requests relates to Benihana's disparate treatment of Meltzer, the text of Requests for Production Nos. 9, 11, 12, 13, 14, 15, and 16 clearly indicate that none of these discovery requests ask for information regarding the enforcement of these standards on other franchisees. Requests for Production Nos. 9, 11, 12, 13, 14, 15, and 16 make no mention of Benihana's enforcement on other franchisees. Thus, to the extent Meltzer seeks discovery pertaining to Benihana's treatment of other franchisees in relation to Requests for Production Nos. 9, 11, 12, 13, 14, 15, and 16, such discovery is DENIED

Request for Production No. 9 asks for inventories of dishes and other dinnerware used at Meltzer's Austin and San Antonio Benihana franchises. At the hearing, Benihana represented that it had no objections to this request. As there appears to be no dispute between the Parties as to the production of these documents, the Court will GRANT Meltzer's Motion to Compel with regard to Request for Production No. 9.

In Request for Production No. 11, Meltzer asks for all notes and emails regarding the changes in Benihana's standard dinnerware. Here, Meltzer seems to be inquiring into why Benihana decided to change the dishes and dinnerware of its restaurants. As to this issue, the Court fails to see how the reason behind a franchisor's decision to change the dishes and dinnerware used in its restaurants

is relevant to the current suit.  Meltzer does allege that Benihana repeatedly cited Meltzer's Austin and San Antonio franchises for violating Benihana's requirement that dishes and dinnerware be purchased from Edward Don & Company, even after Meltzer allegedly complied with this requirement.  *See* Dkt. No. 78, ¶ 67.  However, the relevant information concerning Meltzer's purported violation of Benihana's dishes and dinnerware requirements are Benihana's standards themselves, not the reasoning behind why Benihana decided to change them.  Whether the dinnerware supplied by Edward Don & Company is actually of lesser quality, as Meltzer alleges, is irrelevant to the whether Meltzer complied with Benihana's changed requirement regarding its standard dinnerware.  Accordingly, the Court will DENY Meltzer's Motion to Compel as it pertains to Request for Production No. 11.

Taken together, Requests for Production Nos. 12, 13, 14, and 15 seek production related to several standards set by Benihana for its restaurants.  These requests include information on (1) Benihana's teppanyaki restaurant design models; (2) a comprehensive set of standards used by Benihana for its restaurants, including all standards that Benihana claims were violated by Meltzer's franchises; (3) documents regarding Benihana's food specifications; and (4) the operations manual furnished to each Benihana franchisee.  As a general matter, the Court finds these requests to be relevant to the current suit.  A significant part of Meltzer's allegations in this suit involve what he believes to be Benihana's wrongful treatment and eventual termination of Meltzer as a Benihana franchisee.  Meltzer contends that Benihana cited him for violations and made numerous demands to change aspects related to his franchise restaurants, oftentimes after the purported violation had previously been approved by Benihana.  Thus, the standards used by Benihana in evaluating its

franchisees, particularly those standards it claims Meltzer violated, are certainly relevant to the instant suit.

However, as mentioned previously, information sought in discovery must be relevant to the case and reasonably calculated to lead to the discovery of admissible evidence. Here, Meltzer seeks production of Benihana's teppanyaki restaurant design models for the last ten years; his requests for Benihana's general restaurant standards, food specifications, and operations manual do not state a time frame. As the events giving rise to the current suit occurred between 2009 and 2011, the Court finds Meltzer's requests to be too broad in scope. Having considered the allegations presented and the need to limit discovery to a reasonable time period, the Court concludes that a reasonable period for discovery as it relates to Requests for Production Nos. 12, 13, 14, and 15 shall run from January 1, 2008, until December 31, 2012. This time period reasonably allows Meltzer to obtain information relating to Benihana's restaurant standards, including any changes to these standards both prior to the events giving rise to the current suit and following Meltzer's termination, while protecting Benihana from unreasonably broad discovery. Thus, the Court will GRANT Meltzer's Motion to Compel regarding Requests for Production Nos. 12, 13, 14, and 15 to the extent these requests seek responsive information within this discovery time frame. As to requests for information outside this time frame, Meltzer's Motion to Compel is DENIED.

The Court further notes that with regard to Request for Production No. 14, although Meltzer may obtain discovery regarding Benihana's food specifications within the above-mentioned time frame, Meltzer is not entitled to production concerning the "decision-making process" for Benihana's food specifications. Similar to the previous discussion involving Benihana's changed dinnerware standards, the relevant information is Benihana's food specifications, not the decision-

making process behind each change in food specifications.  To the extent Benihana changed its food specifications between January 1, 2008, and December 31, 2012, these changes will be reflected in the food specification standards themselves, the discovery of which has been permitted by the Court.

Finally, Request for Production No. 16 asks for documents regarding any potential expansion of Benihana's franchisee system as well as documents pertaining to the development or changes in Benihana's franchisee system.  After considering the Parties' arguments, the Court finds that the information sought in Request for Production No. 16 is not relevant to Meltzer's claims.  In the current suit, Meltzer alleges that Benihana engaged in wrongful conduct in terminating Meltzer's Austin and San Antonio franchises and in making numerous misrepresentations during the Parties' negotiations for a new franchise agreement.  The Court does not agree with Meltzer that Benihana's plans for expansion or changes in its franchisee system are relevant to these issues.  The decisions Benihana makes regarding its franchisee system is not reasonably related to its purported wrongful treatment of Meltzer.  To the extent Meltzer suggests that acquiring information on Benihana's franchisee plans will shed light on Benihana's improper motives in its treatment of Meltzer, this possibility amounts to nothing more than mere speculation.  "Rule 26(b) will not permit unlimited discovery."  *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (5th Cir. 2010). Instead, the information sought must be reasonably calculated to lead to the discovery of admissible evidence.  Nothing in the record leads the undersigned to reasonably believe that Benihana's expansion plans or changes in its franchisee system are relevant to Meltzer's claims in this suit. Thus, the Court will DENY Meltzer's Request for Production No. 16.

To summarize the preceding discussion, the Court GRANTS Meltzer's Motion to Compel with regard to Request for Production No. 9.  The Court further GRANTS IN PART AND DENIES

12

IN PART Meltzer's Motion to Compel as it pertains to Requests for Production Nos. 12, 13, 14, and

15.  Finally, the Court DENIES Meltzer's Motion to Compel in relation to Requests for Production

Nos. 11 and 16.

**3.      Discovery Related to Meltzer's Performance in  Comparison to Other Franchisees**

**Request for Production No. 10: Produce all documents regarding the requirement to purchase plates and other dinnerware from a specific company and the enforcement of that requirement across the Benihana franchises and corporate restaurants.**

**Request for Production No. 17: Produce appraisal reports (both formal and informal) on the Austin and San Antonio Benihana restaurants, and all discussions regarding how the restaurants were or should be valued.**

**Request for Production No. 21: Produce the financial reports provided to you by your franchise stores from the period of January 1, 2008 to the present.**

**Request for Production No. 22: Produce the financial reports provided to you by your corporate stores from the period of January 1, 2008 to the present.**

**Request for Production No. 25: Produce all of the Everclean Services, Inc., and Retail Eyes reports that were regarding the Meltzer Franchises from January 1, 2008 to the present.**

**Request for Production No. 26: Produce copies of all other secret shopper and mystery shopper consulting reports (not already included in one of our production requests) submitted to or created by Benihana about the franchises and corporation restaurants during the period of January 1, 2008 to the present.**

**Request for Production No. 27: Produce copies of all inspections (not already included in one of our production requests) that you possess or requested regarding the Meltzer franchises.**

**Request for Production No. 28: Produce copies of all inspections from any Benihana restaurant (including corporate and franchise stores) where improper plates or other dinnerware were a default item.**

13

**Request for Production No. 29: Produce copies of all inspections from any Benihana restaurant (including corporate and franchise stores) where the displaying of customer and celebrity pictures was a default item.**

**Request for Production No. 30: Produce copies of all inspections from any Benihana restaurant (including corporate and franchise stores) where displaying pictures of the founder (Rocky Aoki) was a default item.**

**Request for Production No. 31: Produce the Consulting Reports that Benihana had prepared by Tom Vrable [sic], Arturo Garzon, and Hair Parr [sic].**

The bulk of the Parties' dispute involves the third set of production requests. This group of discovery requests seeks production of information related to the value of Meltzer's franchises in Austin and San Antonio, financial reports of Benihana's franchise and corporate stores, and inspection and consulting reports regarding Meltzer's Benihana franchises as well as other Benihana franchises and corporate stores. In particular, Meltzer asks for all inspections from any Benihana restaurant cited for violating Benihana's dinnerware requirement or for having pictures of customers, celebrities, or Mr. Aoki displayed in the restaurant. In this group, the Court also considers Request for Production No. 10, which involves discovery regarding Benihana's "requirement to purchase plates and other dinnerware from a specific company and the enforcement of that requirement across the Benihana franchises and corporate restaurants."

As an initial matter, the Court addresses Meltzer's Requests for Production Nos. 17, 25, and 27, which seek production of formal and informal appraisal reports on Meltzer's Austin and San Antonio Benihana franchise restaurants, all reports regarding the Meltzer franchises submitted by Everclean Services, Inc., and Retail Eyes from January 1, 2008, to the present, and all inspections concerning the Meltzer franchises not already produced. At the hearing, Benihana represented that

it had no objections to the production of these documents. Consequently, the Court GRANTS Meltzer's Motion to Compel as it relates to Requests for Production Nos. 17, 25, and 27.

### a.    Scope of Discovery under New York Law

Turning to the scope of discovery under New York law, Meltzer and Benihana primarily disagree as to whether information related to Benihana's treatment of other franchisees and corporate stores is discoverable under New York law. Meltzer argues that because Judge Yeakel has ruled that New York law applies to Meltzer's breach of contract claims and because under New York law all contracts contain an implied covenant of good faith and fair dealing, information concerning Benihana's enforcement of its standards and treatment of other franchisees is discoverable. Meltzer claims that Benihana's alleged unfair treatment of Meltzer can only be shown through evidence on how Benihana treated its other restaurants. Benihana disputes this characterization of New York law, contending that the implied covenant of good faith and fair dealing is limited to the terms of the contract. Under Benihana's interpretation, the implied covenant of good faith and fair dealing only applies to the term of the contract; it does not create an obligation on the part of the franchisor to treat all franchisees equally. According to Benihana, as long as Benihana was enforcing its rights under the existing franchise agreements it had with Meltzer, Benihana cannot be held liable for breaching the implied covenant of good faith and fair dealing. Consequently, information regarding how Benihana treated other franchisees is not relevant and would not be discoverable in this case.

After carefully reviewing the arguments and extensive briefing by both Parties on this issue as well as Judge Yeakel's ruling on Benihana's Motion to Dismiss (Dkt. No. 115), the Court concludes that Meltzer is entitled to limited discovery of information related to other Benihana franchisees and corporate stores. At the hearing and in its filings, Benihana continuously reiterates

15

that the implied covenant of good faith and fair dealing is limited to the terms of the contractual agreement between Meltzer and Benihana.  *See, e.g.*, Dkt. No. 131 at 4.

In New York, although a breach of the implied covenant of good faith and fair dealing is "merely a breach of the underlying contract," *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002), a party may still breach the implied covenant *without* breaching the express terms of the contract.  In *Lonner v. Simon Prop. Group, Inc.*, 866 N.Y.S.2d 239 (N.Y. App. Div. 2008), which involved litigation over the "dormancy fee" charged on gift cards, the court stated that "[e]ven were the defendant entitled to charge dormancy fees, it is still precluded under the implied covenant of good faith and fair dealing from setting such fees at grossly excessive amounts."  *Id.* at 246.  Other federal and New York state court cases have also held that contract terms need not be breached in order for a claimant to sufficiently allege a cause of action under the implied covenant of good faith and fair dealing.  *See, e.g.*, *Chase Manhattan Bank, N.A. v. Keystone Distributors, Inc.*, 873 F.Supp. 808, 816 (S.D.N.Y. 1994) (permitting a claim for breach of the implied covenant of good faith and fair dealing, even where the contract was not breached); *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 838 N.Y.S.2d 536, 538 (N.Y. App. Div. 2007) (affirming the lower courts decision declining to dismiss a cause of action for breach of the implied covenant of good faith and fair dealing even where such actions were permitted by the contract because plaintiff's allegations raised a triable issue of fact as to whether Rolex exercised its discretion under the contract in bad faith); *Richbell Info. Serv., Inc. v. Jupiter Partners, L.P.*, 765 N.Y.S.2d 575, 586–88 (N.Y. App. Div. 2003) (allowing a claim for the breach of the implied covenant of good faith and fair dealing to proceed because plaintiff's allegations supported a claim that defendant "exercised a [contract] right malevolently, for its own gain as part of a purposeful scheme designed to deprive plaintiffs of the

16

benefits of the [contract]").  Indeed, Judge Yeakel's ruling on Benihana's Motion to Dismiss, by which the undersigned is bound, rejected Benihana's claim that Meltzer was unable to sufficiently plead a claim for breach of the implied covenant and explicitly noted that "[a] party may breach the implied covenant of good faith and fair dealing even where the contract permits the alleged conduct." *See* Dkt. No. 115 at 8–9 (citing *Lonner*, 866 N.Y.S.2d at 246).  Thus, in this case, the trier of fact could find that Benihana breached the implied covenant of good faith and fair dealing even though its actions were permitted under its contract with Meltzer.

Under New York law, the implied covenant of good faith and fair dealing "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 746 N.Y.S.2d 131, 136 (N.Y. 2002).  Although the implied covenant of good faith and fair dealing cannot imply "obligations inconsistent with other terms of the contractual relationship, they do encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Id*. (internal quotations and citations omitted). Furthermore, "[w]here the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Dalton v. Educational Testing Serv.*, 639 N.Y.S.2d 977, 979 (N.Y. 1995); *see also Travellers Intern., A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1575 (2d Cir. 1994) ("Even when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith.").

Here, the franchise agreement between Meltzer and Benihana "contemplates the exercise of discretion."  For example, at various points, the contract highlights the importance of maintaining

17

high-quality standards throughout the Benihana franchises. *See* Dkt. No. 78, Exh. 1 at Preamble and

Art. VII, ¶ 7.1(b). Failure to maintain these standards or to comply with the procedure, system, and

method of operation, including the quality of food products served, is grounds for termination. *Id.*

at Art. X, ¶ 10.1(f). These standards, and whether a franchisee is in compliance with the standards,

is naturally at the discretion of Benihana. Furthermore, in relation to Meltzer's compliance with the

Benihana System, Article VI of the contract expressly notes that Meltzer "shall purchase all . . .

Material[, including equipment, tables, fixtures, food, beverages, dishes, mugs and supplies,] as

complies with the specifications from time-to-time promulgated by [Benihana] regarding such

Material." *Id.* at Art. VI, ¶ 6.1. Paragraph 6.2 further states that Meltzer is to "abide by all

recommendations of [Benihana] relating to changes in said procedure, system and method of

operation." *Id.* at Art. VI, ¶ 6.2. Consequently, whether Benihana decides to make any changes to

its operating procedure or the materials used by its restaurants is also clearly at the discretion of

Benihana. Under New York law, Benihana has an obligation to exercise that discretion in good

faith.

Benihana has repeatedly pointed to a case decided by the Eleventh Circuit, *Burger King*

*Corp. v. Weaver*, 169 F.3d 1310 (11th Cir. 1999), as support for its assertion that the information

sought by Meltzer is not discoverable. Benihana's reliance on *Burger King* is unconvincing for two

reasons. First, the Eleventh Circuit considered the scope of the implied covenant of good faith and

fair dealing under Florida law, not New York law. Moreover, whereas New York law permits a

party to bring a claim for breach of the implied covenant of good faith and fair dealing even when

the express terms of the contract have not been violated, Florida law does not. *See Burger King*, 169

F.3d at 1318 ("[A] cause of action for breach of the implied covenant cannot be maintained (a) in

derogation of the express terms of the underlying contract or (b) *in the absence of breach of an express term of the underlying contract*.") (emphasis added).   Thus, the scope of the implied covenant of good faith and fair dealing is narrower in Florida than in New York.

In light of the foregoing discussion, the Court will permit discovery of information related to Benihana's other franchisee and corporate restaurants.   Whether Benihana specifically targeted Meltzer's franchises for termination is certainly relevant to resolving the question of whether Benihana breached the implied covenant of good faith and fair dealing.   Evidence that other franchises were treated differently, should such evidence exist, would be relevant circumstantial evidence on this point.   Although the Court agrees that such information would be relevant to the extent it shows that Benihana acted in bad faith, the undersigned is still mindful of the restrictions outlined in Federal Rule of Civil Procedure 26(b), which limits discovery to information that is relevant or that is reasonably calculated to lead to the discovery of admissible evidence.   Therefore, the Court limits Meltzer's discovery as follows.

Request for Production No. 10 asks for production related to the requirement to purchase plates and other dinnerware from a specific company as well as the enforcement of that requirement across the Benihana franchises and corporate restaurants.   Benihana represented at the hearing that it had no objection to production of Benihana's dinnerware standards and the announcement of the adoption of those dinnerware standards to Benihana's franchisees and corporate stores.   It did object, however, to production concerning the enforcement of the dinnerware requirements on other Benihana franchises and corporate restaurants.   From the text of the Request, it is unclear precisely what Meltzer is seeking to discover.   For example, the Court is unable to ascertain whether Meltzer is seeking internal Benihana communications regarding the enforcement of the dinnerware

requirements or the inspection reports of Benihana franchises and corporate stores found to have violated the dinnerware requirements.  The Court further notes that this latter part of Request for Production No. 10 appears related to Request for Production No. 28, which seeks copies of all inspections from any Benihana franchise or corporate restaurant where improper plates or dinnerware was a default item.  Because the Court is unable to decipher precisely what Meltzer is requesting and given the similar inquiry in Request for Production No. 28, the Court will GRANT Request for Production No. 10 as to Benihana's requirement to purchase plates and other dinnerware from a specific company but DENY the request in all other respects.  To the extent Meltzer seeks discovery on other Benihana franchisees or corporate stores that were found to be in violation of Benihana's dinnerware requirements, Meltzer will be able to obtain such discovery under Request for Production No. 28 as discussed below.

Requests for Production Nos. 21 and 22 ask for the financial reports provided to Benihana by Benihana's franchise and corporate restaurants from January 1, 2008, through the present. Meltzer states that this information is relevant to showing the superior performance of Meltzer's Austin and San Antonio franchises as compared to other Benihana restaurants.  Benihana contends that such information is not relevant because Meltzer's franchises were not terminated based on their financial performance.  Rather, Meltzer's franchises were terminated because they had violated several standards that Benihana had set for its restaurants.  In considering these arguments, the Court concludes that the financial reports of other Benihana franchisees and corporate stores are not relevant to Meltzer's remaining claims.  Benihana has represented that Meltzer's franchises were not terminated because they were not performing well financially.  Meltzer does not allege anything to the contrary.  If Meltzer seeks to show the profitability of his Austin and San Antonio Benihana

franchises, he can certainly do so by using the financial reports for his own restaurants. Thus, the Court will DENY Meltzer's Motion to Compel as it pertains to Requests for Production Nos. 21 and 22. However, Benihana is hereby warned that should it open the door at trial or in future pleadings regarding the financial performance of Meltzer's restaurants as a defensive issue, information concerning the financial performance of Meltzer's franchises as compared to other Benihana restaurants would become discoverable.

Requests for Production Nos. 26, 28, 29, and 30 seek copies of inspection or consulting reports submitted to Benihana about its franchises and corporate restaurants.[3] Specifically, Request for Production No. 26 asks for all copies of consulting reports submitted by secret shoppers and mystery shoppers from January 1, 2008, through the present. Requests for Production Nos. 28, 29, and 30 seek copies of all inspection reports from any Benihana restaurant where improper plates or other dinnerware, the displaying of customer and celebrity pictures, or displaying pictures of Mr. Aoki was a default item. Benihana objects on the grounds that the requests seek information that is not relevant to the current suit. Benihana does agree to produce all such inspection and consulting reports related to Meltzer's Austin and San Antonio franchises. Thus, the remaining issue is whether Meltzer is entitled to discovery regarding the inspection and consulting reports referred to in Requests for Production Nos. 26, 28, 29, and 30 about other Benihana franchises and corporate stores.

Although the Court will permit discovery regarding information about other Benihana franchises and corporate stores, the Court finds Meltzer's specific requests considered here to be too

---

[3] At the hearing, the Parties represented to the Court that "consulting reports" were essentially a type of inspection report used by Benihana to evaluate the performance of its restaurants.

broad in scope. To allow Meltzer to obtain inspection and consulting reports for *all* Benihana restaurants would certainly involve the production of reports for Benihana restaurants that did not violate Benihana's dinnerware requirements or the requirements regarding the display of pictures of customers, celebrities, or Mr. Aoki. Those reports would not be relevant to the current suit. Furthermore, permitting discovery of *all* inspection reports as in Requests for Production Nos. 28, 29, and 30 would certainly involve the production of reports submitted prior to the relevant time frame in this suit. As has been detailed previously, the events giving rise to the current suit occurred between 2009 and 2011. An inspection report from 2006, for example, would not be relevant to Meltzer's claims in this suit.

Having considered Meltzer's remaining claims as well as the time frame outlined in this suit, the Court concludes that a reasonable period for discovery as it relates to Requests for Production Nos. 26, 28, 29, and 30 shall run from January 1, 2008, until July 14, 2011, the effective date of Meltzer's termination as a Benihana franchisee. This time period reasonably allows Meltzer to obtain discovery regarding other Benihana franchises and corporate stores to determine whether Benihana specifically targeted Meltzer's franchises for termination, while limiting discovery to a reasonable time frame. Thus, the Court will GRANT Meltzer's Motion to Compel regarding Requests for Production Nos. 26, 28, 29, and 30 to the extent these requests seek responsive information within this discovery time frame. As to requests for information outside this time frame, Meltzer's Motion to Compel is DENIED.

Additionally, with regard to Request for Production No. 26, the Court further concludes that Meltzer is only entitled to discovery of consulting reports submitted by secret shoppers and mystery shoppers about those Benihana franchises and corporate stores that were found to be in violation of

22

Benihana's dinnerware requirements or the requirements concerning the display of pictures of customers, celebrities, or Mr. Aoki.  In other words, Meltzer may not obtain discovery of consulting reports for *all* Benihana franchises and corporate stores.  Instead, Benihana must produce only those consulting reports prepared by secret or mystery shoppers concerning those Benihana franchises and corporate stores that were identified under Requests for Production Nos. 28, 29, or 30.  Thus, to the extent Request for Production No. 26 seeks production of consulting reports submitted by secret and mystery shoppers about Benihana franchises and corporate stores where a violation of Benihana's dinnerware requirements or the requirements regarding the display of pictures of customers, celebrities, or Mr. Aoki was a default item, the Court will GRANT Meltzer's Motion to Compel with regard to Request for Production No. 26.  In all other respects, the request is DENIED.

Finally, Request for Production No. 31 asks for production of consulting reports prepared by Tom Vrabel, Arturo Garzon, and Hair Parra.[4]  Meltzer asserts that these reports are necessary to ascertain whether Benihana "exposed [Meltzer] to disparate treatment and engaged in a course of conduct to constructively or actually drive [Meltzer] out of business."  *See* Dkt. No. 120, ¶ 50. Benihana noted at the hearing that it was unsure as to whether any reports even existed, particularly with regard to Mr. Vrabel because he did not conduct many inspections himself given his position as Senior Director of Franchising.  In considering Request for Production No. 31, the Court notes that its text is extremely broad.  Meltzer does not specify the scope or the time frame of the production.  For example, it is unclear whether Meltzer is only asking for the consulting reports of

_____

[4] At the time of the events in this suit, Mr. Vrabel was Benihana's Senior Director of Franchising, Mr. Garzon was a Benihana employee who inspected Meltzer's restaurants in Austin and San Antonio, and Mr. Parra was a former Benihana franchise director who had been hired by Meltzer to train the staff at Meltzer's San Antonio Benihana location.  *See* Dkt. No. 78.

Mr. Vrabel, Mr. Garzon, and Mr. Parra with regard to Meltzer's franchises in Austin and San Antonio or whether Meltzer seeks the production of *any* consulting report regarding *any* Benihana restaurant submitted by Mr. Vrabel, Mr. Garzon, or Mr. Parra.  After review, the Court concludes that Meltzer is entitled to production of any consulting reports authored by Mr. Vrabel, Mr. Garzon, and Mr. Parra concerning Meltzer's Benihana franchises in Austin and San Antonio from January 1, 2008, until July 14, 2011, the effective date of Meltzer's termination.  Reports made by Mr. Vrabel, Mr. Garzon, and Mr. Parra outside this time frame are not relevant to the current suit because they are not reasonably related to the time period during which the events giving rise to the current suit occurred.  Furthermore, given that Meltzer is already permitted to conduct discovery concerning other Benihana franchises, any additional reports by Mr. Vrabel, Mr. Garzon, and Mr. Parra would appear to be repetitive and unwarranted at this time.  As such, to the extent Request for Production No. 31 seeks consulting reports prepared by Mr. Vrabel, Mr. Garzon, and Mr. Parra concerning Meltzer's Benihana franchises in Austin and San Antonio, the Court will GRANT Meltzer's Motion to Compel as it pertains to Request for Production No. 31.  In all other respects, the request is DENIED.

In summary, the Court GRANTS Meltzer's Motion to Compel as it relates to Requests for Production Nos. 17, 25, and 27.  Meltzer's Motion to Compel with regard to Requests for Production Nos. 21 and 22 are hereby DENIED.  Finally, the Court GRANTS IN PART and DENIES IN PART Meltzer's Motion to Compel as it pertains to Requests for Production Nos. 10, 26, 28, 29, 30, and 31.

4.    **Miscellaneous Discovery Matters**

**Request for Production No. 39: Produce a copy of the Benihana Corporation's newsletter (Shrimp Tails) for the years of 2006 to 2012.**

**Request for Production No. 40: Produce all notes, memos, correspondence regarding discussions about and requested changes that you considered and wanted to the new Austin location (i.e., the Property).**

**Request for Production No. 42: Produce all oral or written statements made by you or your representatives concerning this suit.**

The remaining discovery disputes concern Meltzer's requests relating to the production of copies of Benihana's newsletter, the production of all notes, memos, and correspondence concerning the changes Benihana wanted and considered for the new Austin location, and the production of all oral or written statements made by Benihana or its representatives concerning the current case. Meltzer believes the Benihana newsletters are relevant because they will show Meltzer's "superior performance as a franchisee compared to other franchisees." Dkt. No. 120, ¶ 54. As to Requests for Production Nos. 40 and 42, Meltzer simply asserts that Benihana has not produced all documents responsive to these requests despite not having any objections.

At the hearing, Benihana represented that it had no objections to production of its newsletter. Additionally, Benihana proffered no objections to Meltzer's requests for documents concerning Benihana's communications regarding changes it considered and wanted for the new Austin location or any statements made by Benihana or its representatives about the instant suit. Benihana further noted that it would produce all non-privileged documents responsive to Requests for Production Nos. 40 and 42.

Given Benihana's representations at the hearing, the Court GRANTS Meltzer's Motion to Compel as it pertains to Requests for Production Nos. 39, 40, and 42. With regard to Requests for

25

Production Nos. 40 and 42, Benihana is ORDERED to produce all non-privileged documents responsive to these requests.  To the extent Benihana withholds any responsive documents to Requests for Production Nos. 40 and 42, Benihana is ORDERED to provide a privilege log to Meltzer so that Meltzer may assess the applicability of any privileges asserted.

### III.  CONCLUSION

In light of the foregoing analysis, Meltzer's Second Motion to Compel Depositions (Dkt. No. 116) is DENIED AS MOOT.

Furthermore, Meltzer's Second Motion and Supporting Memorandum to Compel Production Responses (Dkt. No. 120) is GRANTED IN PART and DENIED IN PART in accordance with the preceding discussion.  Benihana shall produce the responsive documents no later than April 5, 2013.

SIGNED this 26th day of March, 2013.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE