## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **MELTZER/AUSTIN RESTAURANT** | § | |
| **CORPORATION, et al.,** | § | |
| | § | |
| **V.** | § | **A-11-CV-542-LY** |
| | § | |
| **BENIHANA NATIONAL CORP.** | § | |

## <u>ORDER</u>

Before the Court are three motions relating to discovery and their associated responses, replies, and supplements:

(1) Defendant's Motion to Compel Answers to Interrogatories (Dkt. No. 141); Plaintiffs' Response (Dkt. No. 151); and Defendant's Reply (Dkt. No. 159);

(2) Plaintiffs' Motion to Compel 30(b)(6) Deposition (Dkt. No. 143); Defendant's Response Memorandum to Plaintiffs' Motion and Alternatively, Motion for Protective Order *Nunc Pro Tunc* (Dkt. No. 157); and Plaintiffs' Reply (Dkt. No. 160); and

(3) Counter-Defendants' Meltzer San Antonio Restaurant's I, L.P., and Meltzer/Austin Restaurant Corporation's Motion to Quash (Dkt. No. 144).

The District Court referred the above motions to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

The Court conducted a hearing on the above-motions on May 20, 2013. After reviewing the Parties' arguments at the hearing, the Parties' briefs, the relevant case law, as well as the entire case file, the undersigned issues the following order.

# I.  BACKGROUND

The relevant facts in this case were detailed in a previous order.  *See* Dkt. No. 108.  Notably, the current motions are the **seventh, eighth** and **ninth** discovery-related motions in this case.  *See* Dkt. Nos. 84, 88, 105, 111, 116 and 120.[1]  Despite previous encouragement to resolve their discovery issues without the intervention of the Court, the parties have been unable to do so and seek the Court's assistance with the following discovery disputes.

# II.  ANALYSIS

## A.    Defendant's Motion to Compel Answers to Interrogatories (Dkt. No. 141)

In this motion, Defendant Benihana National Corporation ("Benihana") asks the Court to compel Plaintiffs Meltzer, et al. ("Meltzer"), to amend its answers to Interrogatory Nos. 1, 2 and 8–18.  Dkt. No. 141 at 2.  Generally, Benihana complains that Meltzer's answers are "incomplete, non-responsive, evasive, improperly refer to other pleadings, motions and documents and raise unsupported objections."  *Id.* at 2.  Interrogatory 1 asks Meltzer to detail his claimed damages and how they were computed, and Interrogatory 2 asks the Meltzer parties to identify people he communicated with concerning the notices of default.  Each of the remaining interrogatories are "contention" interrogatories, seeking the facts to support a number of specific contentions contained in Meltzer's Fourth Amended Complaint ("complaint"), most of which relate to false statements Meltzer contends Benihana made during their relationship.  Benihana claims that it has repeatedly asked Meltzer to provide proper answers to these interrogatories, but that Meltzer's responses continue to lack "any specific facts concerning the alleged misrepresentations/breaches and the

---

[1]Although I have not kept records on such matters, I believe that, of all of the cases I have worked on in nearly fourteen years as a magistrate judge, this case has the ignominious distinction of having the most discovery motions ever filed in one case.

circumstances surrounding them." *Id.* Meltzer submits that he has attempted to provide Benihana with the information requested. Dkt. No. 151 at 6. Meltzer further notes that several of Benihana's interrogatories ask for facts that are already contained in the complaint, and that some of the interrogatories call for overlapping answers. *Id.* at 3–6. Having reviewed arguments from both parties, the Court now addresses the interrogatories at issue.

**1.     Interrogatory No. 1**[2]

Interrogatory No. 1 requests details related to Meltzer's claimed damages. In his briefing and at the hearing, Meltzer represented that an expert report on damages was provided to Benihana on May 3, 2013, and that the delay was due to Meltzer's "ongoing inability to obtain discovery." Dkt. No. 151 at 2. Furthermore, to the extent the report fails to satisfy the interrogatory, Meltzer has agreed to supplement his answer. *Id.* Although Benihana acknowledges in its reply that Meltzer provided an expert report concerning claimed damages, Benihana asks that the Court order Meltzer to supplement the report without stating why it believes the report is inaccurate or lacking information. Dkt. No. 159 at 4.

At the hearing, Benihana reiterated that it had received an expert report from Meltzer concerning his claimed damages in this case, but requested that Meltzer be ordered to supplement

---

[2]"State each item of damage that You claim and include in Your answer: the count or defense to which the item of damages relates; the category into which each item of damages falls, i.e. general damages, special or consequential damages (such as lost profits), interest, and any other relevant categories; the factual basis for each item of damages; an explanation of how You computed each item of damages, including any mathematical formula used, and; each document (including electronically stored information and/or pertinent insurance agreements) supporting your damage claim."

"You" or "Your" is defined in the interrogatories to refer to "Meltzer, Meltzer Austin Restaurant I, Meltzer Austin Restaurant II and/or Meltzer San Antonio Restaurant, individually and/or collectively, and any person(s) purporting to act on their behalf including, without limitation, spouses, partners, children, parents, agents, employees, attorneys and/or representatives."

his interrogatory answer with a sworn statement to confirm that the expert report represents the finalized damages upon which he will rely for trial.  Meltzer agreed to do so.  Given the Parties' representations at the hearing, the Court will **GRAN**T Benihana's Motion to Compel as to Interrogatory No. 1 to the extent it seeks an amended answer from Meltzer that confirms and finalizes Meltzer's claimed damages in this case and is sworn to by Meltzer.  To the extent Benihana seeks any other information pursuant to Interrogatory No. 1, its motion is **DENIED**.

     2.      **Interrogatory No. 2**[3]

Interrogatory No. 2 requests Meltzer to identify all persons with whom Meltzer communicated concerning the notices of default which led to the termination of his franchises.  Benihana complains that Meltzer's answer provides only a non-exhaustive list of individuals without any facts regarding the substance of each communication.  Dkt. No. 141 at 5.  According to Benihana, Meltzer's answer contains only vague and unspecified generalities.  *Id.*  In response, Meltzer argues that the specifics of his communications regarding the Notices of Default were already provided during his deposition.  Dkt. No. 151 at 2.  Additionally, Meltzer refers the Court to his supplemental answer to Interrogatory No. 6, which describes each of the alleged defaults and the actions he took with respect to each one.  *Id.*

As an initial matter, the Court finds Meltzer's reliance upon his supplemental answer to Interrogatory No. 6 to be unpersuasive.  Benihana's Interrogatory No. 2 asks for information concerning Meltzer's communications regarding the Notices of Default as well as the substance of those communications.  Interrogatory No. 6 relates to the steps Meltzer took to cure the issues

---

[3]"Identify each person You communicated with regarding the Notices of Default and identify the substance of each communication."

described in the Notices of Default.  While the Court recognizes that it is possible and certainly logical for communications between Meltzer and other individuals regarding the Notices of Default to be included in his answer to Interrogatory No. 6, the Court's review of Meltzer's supplemental answer to Interrogatory No. 6 shows that such communications were not included in his answer. Dkt. No. 151, Exh. A at 3–5.  Thus, Meltzer may not rely on his supplemental answer to Interrogatory No. 6 as support for his answer to Interrogatory No. 2.

Having said this, the Court concludes that Meltzer's answer to Interrogatory No. 2 is sufficient.  Where an interrogatory answer "as a whole disclose[s] a conscientious endeavor to understand the question[] and to answer fully [that question]," a party's obligation under Rule 33 is satisfied.  8B WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2177 (3d ed. 2010) [hereinafter WRIGHT & MILLER].  Although explicitly non-exhaustive, Meltzer provides the names of seven individuals with whom he communicated regarding the Notices of Default and states that these individuals were "made aware of the alleged defaults and acted accordingly."  Dkt. No. 141, Exh. B at 2.  Aside from the difficulty in recalling *every* individual with whom Meltzer communicated with about the Notices of Default, requiring Meltzer to provide an exhaustive list of every individual and the substance of those communications could amount to several pages of text. Meltzer's answer gave Benihana sufficient detail to conduct further discovery, had it decided to do so, through depositions or otherwise.  *See, e.g.*, *Essex Ins. Co. v. Interstate Fire & Safety Equipment Co./Interstate Fire & Safety Cleaning Co.*, 263 F.R.D. 72, 75 (D. Conn. 2009) ("One important purpose of interrogatories is to obtain information necessary to use other discovery devices effectively, including identifying witnesses whose depositions should be taken . . . .") (internal quotations and citations omitted); *see also* WRIGHT & MILLER ("The party may be required to state

his or her recollection of an oral conversation, although in general such details are better inquired

into in a deposition of the person with a recollection of the events.").  The Motion to Compel in

relation to Interrogatory No. 2 is **DENIED**.

### 3.     Interrogatories Related to Fraud Claims: Nos. 8–18[4]

This set of interrogatories seeks the factual support for the fraud allegations contained in the

complaint.  Interrogatories Nos. 8–17 each identify a specific paragraph of the complaint and asks

Meltzer to state with particularity the facts supporting the allegation.  *See* Dkt. No. 141, Exh. A.

Interrogatory No. 18 requests Meltzer to identify "each and every 'false representation' or

'misrepresentation'" described in the complaint, along with the individual making the representation,

the date the representation was made, the substance of the representation, when and where the

representation was made, and what Meltzer alleges Benihana obtained as a result of the

representation.  *Id.*  Generally, Benihana complains that Meltzer's answers to Interrogatories Nos.

8–18 are (1) incomplete and evasive, (2) improperly refer to other documents, (3) provide little or

no facts other than those set forth in the complaint, (4) fail to describe the circumstances surrounding

the claimed misrepresentations, and (5) do not identify which provisions of the existing franchise

agreements between Meltzer and Benihana were breached by Benihana.  Dkt. No. 141 at 6–9; *see*

*also* Dkt. No. 159 at 2–3.  Benihana argues that complete answers to its interrogatories are necessary

"so that those answers may serve as the basis for a motion for summary judgment or for other

purposes permitted by the Rules."  Dkt. No. 141 at 8.  Meltzer contends that the interrogatory

answers are appropriate and that the complaint already provides significant factual allegations to

---

[4] Given their length, the Court will not reproduce the text of these interrogatories here, but refers to, and quotes from them, as needed.

back up the fraud claims.  Dkt. No. 151 at 3–6.  Meltzer also claims the interrogatories require

overlapping answers and the documents it references are well-known by both parties.  *Id.*

A significant part of Benihana's dissatisfaction with Meltzer's answers to Interrogatories

Nos. 8–18 boils down to reiterations of the same issue: that Meltzer has failed to state with

particularity its fraud claim against Benihana, and Benihana's continuing frustration with Meltzer's

inability or refusal to state specifically what his legal claims and the resulting damages are, and what

facts they are based on.  The Court is sympathetic with this frustration, as Meltzer's precise claims

have been moving targets during the many hearings the Court has held in this case.  The Court is

unpersuaded by Meltzer's assertion that the factual support for his fraud claims has been "set out at

length in the Complaint, in the responses to interrogatories, and also have been 'fleshed out' in the

depositions."[5]  Dkt. No. 151 at 3.  Although it is true that the complaint contains some factual

information, the Court concludes that further specificity is required.  As such, the Court will require

Meltzer to supplement or amend his interrogatory answers, as discussed below.

### a.        Interrogatories Nos. 8, 12, 13, 15, 16 and 18

From the parties' filings and representations at the hearing, it is clear that the interrogatories

listed in this section heading overlap.  With regard to this set of interrogatories, Benihana's principal

issue is that Meltzer has failed to specify the particular misrepresentations or false information on

---

[5] The Court is unable to evaluate whether the depositions already taken in this case effectively supplement Meltzer's interrogatory answers, as transcripts of those depositions have not been presented.  However, even if those depositions had provided satisfactory answers, it would not obviate the need for Meltzer to provide interrogatory answers in accordance with the Federal Rules of Civil Procedure.  *See, e.g.*, FED. R. CIV. P. 33(b)(3) (requiring that answers to interrogatories "be answered separately and fully in writing under oath"); *see also J.J. Delaney Carpet Co. v. Forrest Mills, Inc.*, 34 F.R.D. 152, 153 (S.D.N.Y. 1963) (finding that incorporation by reference to a deposition or allegations of a pleading do not constitute a responsive answer to an interrogatory).

which he bases his allegations.  Benihana claims that merely referencing "false information," "false representations," or "misrepresentations" is not sufficiently specific to allow Benihana to identify which statements were allegedly made by Benihana and relied upon by Meltzer. The Court agrees.

Benihana's Interrogatory No. 8 seeks the factual support for Paragraph 78 of the complaint, where Meltzer alleges that he relied on the statements of Benihana's representatives in deciding to purchase property that was to be used for a new Austin Benihana location.  In order to make the purchase, Meltzer states that he had to raise funds by selling Benihana stock at a suboptimal time as well as reduce the principal on another loan, resulting in a prepayment penalty of $158,000.  Dkt. No. 78, ¶ 78.  Interrogatory No. 8 requests that Meltzer (1) identify the representations of Mr. Stockinger and Mr. Vrabel upon which he relied, (2) specify the individuals present during the communication, (3) explain why Meltzer's sale of his Benihana stock at that time was "suboptimal," and (4) identify the lender for the referenced loan and any documents reflecting the alleged pre-payment penalty.

Interrogatories 12, 13, 15 and 16 seek factual support for Paragraphs 138, 139, 148 and 149 of the complaint, respectively.  In Paragraph 138 of the complaint, Meltzer sets forth his fraud claim against Benihana, alleging that Benihana made false representations to Meltzer concerning its intentions regarding a new Austin Benihana franchise restaurant. Dkt. No. 78, ¶ 138.  Meltzer states that Benihana made the false representations knowingly or recklessly with the intent that Meltzer rely on them, thereby placing Meltzer in an "untenable" financial position.  *Id.*  Paragraph 139 of the complaint alleges that Benihana made the false representations with the intent that Meltzer purchase the property.  *Id.* ¶ 139.  In Paragraph 148 of the complaint, Meltzer states that Benihana failed to exercise reasonable care in communicating with Meltzer regarding Benihana's intentions to enter

8

into a new franchise agreement with Meltzer by providing false information.  *Id.* ¶ 148.  Finally, Paragraph 149 alleges that Benihana had a duty to provide Meltzer with accurate and truthful information regarding its intentions to enter into a new franchise agreement with Meltzer.  *Id.* ¶ 149.  Paragraph 149 further charges that Benihana breached its duty by providing false information to Meltzer, thereby causing him harm.  *Id.*

Interrogatory No. 18 is a "catch-all" interrogatory asking Meltzer to identify each and every "false representation" or "misrepresentation" he alleges was made by Benihana, specifically stating (1) the person making the "false representation" or "misrepresentation," (2) the date of the "false representation" or "misrepresentation," (3) the substance of the "false representation" or "misrepresentation," (4) when and where the "false representation" or "misrepresentation" was made, and (5) what Meltzer alleges Benihana obtained as a result of the "false representation" or "misrepresentation."  Dkt. No. 141, Exh. A at 123.

As noted, Meltzer has not sufficiently identified the misrepresentations he contends supports his lawsuit.  For example, Meltzer's answer to Interrogatory No. 8 merely states that he had several phone conversations with Mr. Stockinger and Mr. Vrabel about the purchase of the property and that he relied on these conversations in deciding to move forward with the purchase.  The only detail Meltzer provides is that Mr. Vrabel told him there would be no initiation fee for the new franchise restaurant. Dkt. No. 141, Exh. B at 4.  There are no details regarding the communications Meltzer had with Mr. Stockinger or when these phone conversations took place.[6]  Additionally, although

---

[6] Paragraph 78 of the Complaint states that "[i]n May of 2010, relying on the representations of Mr. Stockinger and Mr. Vrabel, Mr. Meltzer purchased the Property."  The reference to May 2010 appears to apply to Meltzer's purchase of the property, not the dates on which he had conversations with Mr. Stockinger or Mr. Vrabel.

Meltzer's answer to Interrogatory No. 12 states that Meltzer was in regular communication with Mr. Stockinger and relied on his comments about several topics of discussion, no details are provided regarding what was said about those topics. *Id.* at 6. Moreover, Meltzer adds a sentence referring to "other interrogatory responses" without identifying which responses he is talking about. *Id.* Meltzer's responses to Interrogatories Nos. 13, 15 and 16 are similarly insufficient, incorporating responses to prior interrogatories without specifying which responses he is referencing. In a case alleging fraud, Benihana is entitled to know the false statements or omissions Meltzer alleges it made to him, and is not required to guess what particular misrepresentation(s) are at issue. Because Meltzer is the party alleging fraud, it is his obligation to identify with specificity the circumstances constituting fraud. Indeed, this burden is placed on Meltzer from the outset of the lawsuit. FED. R. CIV. P. 9(b) (emphasizing that at the pleading stage, the party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake").

Therefore, with respect to this set of interrogatories, the Court concludes that Meltzer must identify the particular misrepresentations or false information upon which his allegations are based and **GRANTS** Benihana's Motion to Compel to the extent it seeks this information. For the alleged representations or false information, Meltzer is **ORDERED** to amend the interrogatory answers in this group by providing, under oath: (1) what representations were made by Benihana or its representatives that Meltzer claims he relied upon; (2) who made the representations; (3) when and where the representations were made; and (4) whether there were other witnesses present when the representations were made. In the likely event that Meltzer is unable to provide all of the details outlined by the Court because of a failure of memory, he must state that specifically.

Further, with regard to Interrogatory No. 8, Meltzer has not provided any information concerning why his sale of Benihana stock at that time was "suboptimal." His interrogatory answer indicates that Meltzer owned 162,000 shares of Benihana stock, which were sold at under $6.00 per share. Meltzer does not state why the sale of his Benihana stock for under $6.00 per share was "suboptimal." Thus, the Court **ORDERS** Meltzer to explain why his sale of Benihana stock at that time was "suboptimal" in his answer to Interrogatory No. 8.[7]

For Interrogatory No. 12, Meltzer is further **ORDERED** to remove the last sentence, which simply refers to "other interrogatory responses." In addition, Meltzer is **ORDERED** to describe the "untenable" financial position that he claims was caused by Benihana's actions.

Answers to Interrogatories Nos. 13, 15, 16 and 18 do not require additional supplementation other than what has already been delineated above. With regard to Interrogatory No. 16, whether Benihana had a duty to supply Meltzer with accurate and truthful information is a legal question. Thus, for Nos. 13, 15, 16 and 18, Meltzer will have satisfied his obligation to provide a full answer when he has identified the specific misrepresentations or false information on which he bases his allegations, in the manner and with the content detailed above.

### b.    Interrogatories Nos. 9, 10 and 11

Interrogatories 9–11 inquire about the factual support for Paragraphs 79, 80 and 133 of the complaint. In Paragraph 79, Meltzer alleges that Benihana's Franchise Proposal for the new Austin franchise, when compared with his existing franchises, left him a smaller percentage of net profit,

---

[7]At the hearing, Meltzer represented that he had removed the pre-payment penalty from his damages calculations and would not be claiming it for trial. Unsurprisingly, Benihana presented no objections to this decision. Consequently, to the extent Benihana seeks documentation regarding the alleged pre-payment penalty, the Court will DENY AS MOOT Benihana's Motion to Compel.

allowed more direct competition with Benihana's own restaurant ventures, removed Benihana's potential liability, and gave Benihana increased leverage to terminate Meltzer's franchise for infractions.[8]  Dkt. No. 78, ¶ 79.  Paragraph 80 of the complaint asserts that under Meltzer's existing Franchise Agreements with Benihana, the terms of any new franchise agreement were to be substantially similar to the Franchise Agreements.  *Id.* ¶ 80.  Finally, in Paragraph 133 of the complaint, Meltzer contends that Benihana breached the Franchise Agreements by:  (1) providing a Franchise Proposal that failed to comply with the Franchise Agreements, (2) falsely alleging that Meltzer's Benihana restaurants were in breach under the Franchise Agreements and improperly terminating the contracts, and (3) requesting that Meltzer make unreasonable changes to his restaurants in violation of the Franchise Agreements.  *Id.* ¶ 133.  Paragraph 133 also alleges that Benihana could not "unreasonably withhold any approval for a substitute or new lease or amendment or modification of an existing lease" and that Benihana breached the implied covenant of good faith and fair dealing.  *Id.* (internal quotations omitted).  At the hearing, Benihana represented that its principal request with regard to Interrogatories Nos. 9, 10 and 11 is that Meltzer identify with particularity the provisions of the Franchise Agreements on which these allegations are based.  In addition, Benihana also claims that Meltzer failed to:  (1) indicate whether the violations alleged in Paragraph 79 of the complaint is an exhaustive list, and (2) specify what actions Benihana took to breach the implied duty of good faith and fair dealing.  In response, Meltzer contends that the complaint itself provides sufficient factual support for these allegations.  Dkt. No. 151 at 4–5.

---

[8]The dispute between Meltzer and Benihana involves several contracts between the two parties.  For the purposes of this Order, the "Franchise Proposal" refers to the proposed agreement submitted by Benihana to Meltzer for the new Austin franchise restaurant.  "Franchise Agreements" refers to the existing agreements between Meltzer and Benihana for Meltzer's former franchise restaurants in Austin and San Antonio.

The Court concludes that Meltzer's reliance on the facts in the complaint to respond to these interrogatories is insufficient.   For example, Paragraph 80 of the complaint, referenced in Interrogatory No. 10, merely alleges that the terms of any new franchise agreement were to be substantially similar to the Franchise Agreements, but it does not state which provision imposes this obligation upon Benihana.  Dkt. No. 78, ¶ 80.  Additionally, Meltzer's answer to Interrogatory No. 11 clearly fails to provide a full response to the interrogatory.  Benihana asks Meltzer to identify the particular provisions of the Franchise Agreements on which Meltzer bases his allegations, to specify which portions of the default letters were allegedly false, and state all facts supporting Meltzer's allegations that Benihana breached its implied duty of good faith and fair dealing.  Dkt. No. 141, Exh. A at 16.  Furthermore, FED. R. CIV. P. 33(d)(1) requires a party responding to interrogatories by referring to documents, to "specif[y] the records that must be reviewed, *in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party* could." Simply identifying the "Franchise Agreements" does not comply with this rule.

Accordingly, the Court will **GRANT** Benihana's Motion to Compel with respect to Interrogatories Nos. 9, 10 and 11.  Meltzer is **ORDERED** to amend his interrogatory answers as follows.  With regard to Interrogatory No. 9, Meltzer is **ORDERED** to identify *all* contracts, including the specific provision(s) thereof, which he claims were violated by Benihana when it submitted its Franchise Proposal to him for the new Austin franchise.  For Interrogatory No. 10, Meltzer is **ORDERED** to specify which provision(s) of the Franchise Agreements required the terms of any new franchise agreement to be substantially similar to the Franchise Agreements.  Finally, as to Interrogatory No. 11, Meltzer is **ORDERED** to (1) "identify the particular provision(s) of the 'Meltzer Franchise Agreements' which required that any new agreement contain the same material

terms," (2) "specify which portions of the default letters were allegedly false," and (3) describe Benihana's acts which Meltzer contends breached the implied duty of good faith and fair dealing. Dkt. No. 141, Exh. A at 16.

      **c.**    **Interrogatory No. 14**

Interrogatory No. 14 seeks details concerning the factual support for Paragraphs 140 and 141 of the Complaint, which allege that the misrepresentations made by Benihana were material or important to Meltzer's decision-making process. Dkt. No. 78, ¶ 140. Meltzer also asserts that he justifiably relied upon Benihana's representations. *Id.* ¶ 141. Benihana takes issue with Meltzer's current answer, which appears to assert attorney-client and work product privileges while at the same time incorporating Meltzer's responses to prior interrogatories. Meltzer contends that Interrogatory No. 14 is objectionable to the extent it seeks a legal conclusion regarding what is "material."

The Court **DENIES** the Motion to Compel as it relates to Interrogatory No. 14 for the following reasons. First, to the extent Interrogatory No. 14 requests details about the particular misrepresentations relied upon by Meltzer, Benihana will obtain that information through Meltzer's amended answer to Interrogatory No. 18. Second, it is unclear to the Court what additional facts Benihana is seeking Meltzer to state. Among the elements of a fraud claim under Texas law[9] is that an actionable misrepresentation be "material." *Coffel v. Stryker Corp.*, 284 F.3d 625, 631 (5th Cir. 2002) (citing *Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). "A fact is material if it would likely affect the conduct of a reasonable person concerning the transaction in question." *Coldwell Banker Whiteside Assoc. v. Ryan Equity Partners,*

---

[9]Judge Yeakel determined when ruling on Benihana's Motion to Dismiss that Texas law governs Meltzer's fraud claims in this case.

*Ltd.*, 181 S.W.3d 879, 888 (Tex.App.—Dallas 2006).  Meltzer has already stated that Benihana's representations were "the sort of representation about a core item in the Meltzer Franchise Agreements or that was important to decisions that Meltzer would make regarding stock/property ownership."  Dkt. No. 78, ¶ 140.  It is not clear what more any party alleging fraud can say factually on this topic of materiality.  Moreover, whether Meltzer's reliance on these representations was "reasonable" will be a conclusion the jury will have to make based upon all of the facts in this case.  The Court fails to see, and Benihana has failed to demonstrate, what additional facts are needed to support the allegations in Paragraphs 140 and 141.  Consequently, the Court will **DENY** Benihana's Motion to Compel as it pertains to Interrogatory No. 14.

### d.    Interrogatory No. 17

Interrogatory No. 17 asks for factual information related to Paragraph 162 of the complaint, which alleges that Benihana imposed extraordinary standards upon Meltzer for the sole purpose of removing Meltzer as a franchisee.  Dkt. No. 78, ¶ 162.  Meltzer claims that Benihana's unprecedented demands destroyed his free agency and left him in a vulnerable position.  *Id.*  At the hearing, Benihana requested that Meltzer be ordered to state whether the listed items in Paragraph 162 of the complaint represent an exhaustive list of the alleged extraordinary demands made by Benihana.  In response, Meltzer points the Court to Paragraph 162 of the complaint, stating that the paragraph itself provides sufficient factual support for the allegations.

Although the Court acknowledges that Meltzer has listed several examples of Benihana's demands in Paragraph 162 of the complaint, the Court concludes that Meltzer's current answer is insufficient.  Unlike Meltzer's current argument, which relies on the allegations of Paragraph 162, Meltzer's answer to Interrogatory No. 17 does not point to anything in the complaint as offering

factual support; rather, it simply refers to Meltzer's responses to prior interrogatories, without specifying which interrogatories he is referencing.  Dkt. No. 141, Exh. B at 7.  Such an answer does not provide sufficient specificity to enable Benihana, or the Court, to determine which portions of Meltzer's previous interrogatory answers are incorporated in his answer for Interrogatory No. 17. Consequently, the Court will **GRANT** Benihana's Motion to Compel with regard to Interrogatory No. 17.  Meltzer is **ORDERED** to amend his answer to Interrogatory No. 17 by providing a complete list of the extraordinary standards Meltzer claims were imposed upon him by Benihana.

In summary, the Court **GRANTS IN PART** and **DENIES IN PART** Benihana's Motion to Compel Answers to Interrogatories (Dkt. No. 141) as set forth above.

## B.    Plaintiffs' Motion to Compel 30(b)(6) Deposition (Dkt. No. 143)

In this motion, Meltzer requests that the Court compel Benihana to designate individuals to testify under Rule 30(b)(6).  According to Meltzer's recitation of events, Meltzer first noticed a corporate representative deposition under FED. R. CIV. P. 30(b)(6) on March 8, 2013, to take place on March 27, 2013.  Dkt. No. 143 at 1.  By agreement, the deposition was rescheduled for April 25, 2013.  *Id.* at 1.  On April 4, 2013, Meltzer sent Benihana its Third Amended Deposition Notice under Rule 30(b)(6).  *Id.*  While there was apparently some discussion between the parties regarding the scope of the deposition, Benihana did not file a motion for protective order with respect to the 30(b)(6) deposition notice.  *Id.* at 2.  Notwithstanding this, on the day before the scheduled 30(b)(6) deposition, during the deposition of one of Benihana's corporate officers, Benihana sent Meltzer a letter indicating that it would not be offering anyone to respond to the majority of the topics listed in the 30(b)(6) notice.  *Id.*  Benihana asserted that it considered each area of inquiry described in Meltzer's 30(b)(6) deposition notice to constitute a separate deposition and thus exceeded the ten

16

deposition limit permitted under the Rules.  Benihana also indicated that the depositions already taken were sufficient to satisfy the requirements of 30(b)(6).[10]  *Id.*

Benihana presents several arguments in support of its position.  First, it asserts that Meltzer is attempting to circumvent the rule limiting parties to ten depositions.  Dkt. No. 157 at 3–4.  Benihana argues that Meltzer has already deposed multiple witnesses for relevant information and that the remaining categories of the 30(b)(6) deposition notice seek irrelevant information under the Federal Rules of Civil Procedure.  *Id.*  Second, Benihana notes that many categories sought in the 30(b)(6) notice ask for testimony that is outside the scope permitted by the Court's previous discovery order.  *Id.* at 4; *see also* Dkt. No. 140.  Finally, Benihana criticizes Meltzer's motion for making inaccurate claims that the witnesses who have already testified were unable to testify adequately on the topics listed in the 30(b)(6) notice.  Dkt. No. 157 at 5.[11]

---

[10] At the hearing, Benihana did not dispute Meltzer's description of the events surrounding Meltzer's 30(b)(6) deposition notice.  Most importantly, Benihana acknowledged that it failed to object to Meltzer's 30(b)(6) deposition notice until April 24, 2013, one day before the deposition was supposed to take place.  The only discrepancy in the reporting of events is that in its response, Benihana refers to Meltzer's 30(b)(6) deposition notice as having been served on March 11, 2013, rather than March 8, 2013.  Dkt. No. 157 at 2.  The document is titled "Amended Notice to Take Oral Deposition Pursuant to FED. R. CIV. P. 30(b)(6)."  *See* Dkt. No. 157, Exh. A.  Without further information, the Court can only assume that Benihana refers to Meltzer's Second Amended Notice for 30(b)(6) depositions.  In any event, the dispute before the Court concerns Meltzer's Third Amended Notice for 30(b)(6) depositions, which both Parties agree was sent to Benihana on April 4, 2013.

[11] Benihana also asks that the Court enter a Protective Order *Nunc Pro Tunc.*, to cure Benihana's procedural failure to have made the motion timely.  There is no legal basis for this request.  Benihana's failure to follow the procedures required by the Federal Rules of Civil Procedure cannot be cured by a "*nunc pro tunc*" motion.  As Meltzer notes, the purpose of a *nunc pro tunc* order is to enter into the record an event that actually took place previously but was not properly recorded at that time.  Benihana never made a motion for protective order, nor did the Court enter one, so there is no basis to enter an order as if a motion had been timely made.  Accordingly, Benihana's Motion for Protective Order *Nunc Pro Tunc* (contained in Dkt. No. 157) is **DENIED**.

17

Meltzer responds that 30(b)(6) depositions constitute one single deposition and its noticed deposition would not be violative of the ten-deposition limit under the Federal Rules of Civil Procedure. Dkt. No. 143 at 2. Meltzer claims that once he has set out the relevant areas of proposed testimony with reasonable clarity, the obligation falls on Benihana to designate representatives to testify. *Id.* at 3. Meltzer further asserts that the deponents at the previous depositions all represented that they were testifying as to their personal knowledge and not as a corporate representative, arguing that depositions of a person as an individual do not bind the corporation or attest to the corporation's collective knowledge. *Id.* at 4–5. Finally, Meltzer requests that the Court compel Benihana to produce its 30(b)(6) witnesses in Austin within the next two weeks, and order it pay for the cost of the court reporter and videographer. *Id.* at 6.

The Court finds Benihana's contentions unconvincing. First, Benihana's reliance on *State Farm Mutual Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227 (E.D. Penn 2008), for its argument that Meltzer is attempting to abuse the limit of ten depositions under FED. R. CIV. P. 30(a)(2)(A)(i) is weak, to say the least. In *State Farm*, the court considered whether defendant New Horizon was required to seek leave of court before noticing a third Rule 30(b)(6) deposition of plaintiff State Farm as a corporate entity. 254 F.R.D. at 234–35. As Benihana emphasizes in its response, the court concluded that defendant was not permitted to take serial Rule 30(b)(6) depositions of a single corporation without leave of court because doing so would violate the policy against allowing multiple depositions of an already-deposed deponent. *Id.*; *see also* FED. R. CIV. P. 30(a)(2)(A)(ii). This case is easily distinguished from *State Farm*. Here, Meltzer is not seeking a second or third Rule 30(b)(6) deposition. Rather, Meltzer has only made one request to take the deposition of Benihana as a corporate entity. The deposition of Benihana, the defendant corporation,

18

is certainly "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). As such, the Court does not find *State Farm* to be applicable to the instant case.

Furthermore, permitting Meltzer's Rule 30(b)(6) deposition would not violate the policy against allowing the deposition of an already-deposed deponent. *See* FED. R. CIV. P. 30(a)(2)(A)(ii). Although depositions of Benihana officers and employees have been conducted, the deposition of Benihana, as a corporation, has not yet been taken in this case. Rule 30(b)(6) depositions are "designed 'to avoid the possibility that several officers and managing agents might be deposed in turn, with each disclaiming personal knowledge of facts that are clearly known to persons within the organization and thus to the organization itself.'" *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432–33 (5th Cir. 2006) (quoting 8A WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2103 (3d ed. 2010)). "The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents." *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996). Under FED. R. CIV. P. 30(b)(6), a corporation "designate[s] one or more officers, directors, or managing agents, or designate[s] other persons who consent to testify on its behalf." The corporation appears vicariously through those individual(s) it designates to testify on its behalf. *Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993). At the hearing, Meltzer represented that during the individual depositions, Mr. Stockinger, Mr. Garzon, and Mr. Vrabel all testified as to their personal knowledge, not as corporate representatives. Dkt. No. 151 at 4–5. Therefore, contrary to Benihana's contention, this is only Meltzer's first bite of the apple.

To the extent Benihana asserts that Meltzer's Rule 30(b)(6) deposition should constitute multiple separate depositions, the argument is without merit. The Court challenged Benihana's

19

counsel at the hearing to identify a single case to support this argument, and he was unable to do so. The advisory committee notes accompanying Rule 30 clearly state that "[a] deposition under Rule 30(b)(6) should, for purposes of this limit, be treated as a single deposition even though more than one person may be designated to testify." FED. R. CIV. P. 30 advisory committee's note (1993). Even the court in *State Farm*, on which Benihana relies, noted that "a Rule 30(b)(6) deposition should be treated as one deposition, no matter how many designees testify, for purposes of the 10-deposition limit." 254 F.R.D. at 234. Benihana's contention that Meltzer's Rule 30(b)(6) deposition should count as multiple depositions is baseless, and has no support in the rules, or the case law interpreting them.

Accordingly, the Court **GRANTS** Meltzer's Motion to Compel 30(b)(6) deposition, subject to the limitations set forth below. The deposition is to take place in Austin, Texas, at a time and place to be mutually agreed upon by the parties, but no later than June 24, 2013. Benihana is **ORDERED** to designate representatives to provide testimony on behalf of Benihana concerning the proposed topics in Meltzer's Third Amended Notice for 30(b)(6) Deposition, as amended below.

Although the Court will compel Benihana to designate representatives for a 30(b)(6) deposition, the Court will circumscribe the topic list contained in Meltzer's notice to conform to prior orders regarding the permitted scope of discovery. *See* Dkt. No. 140. The following topics in Meltzer's 30(b)(6) deposition notice were not objected to by Benihana:

- Topic B: The facts and circumstances concerning or surrounding Benihana's "Renewal Plan" as referenced in BNC 000009-000010, including but not limited to the objectives of the Plan, the implementation of the Plan, and the requirements for compliance with the Plan. *See* December 22, 2009 Letter from Juan Garcia/Tom Vrabel to Mr. Meltzer.

20

- Topic C: The fact and circumstances surrounding the decision to terminate Mr. Meltzer's franchises, including the negotiations concerning the possible purchase of the franchise(s) and the ultimate decision to terminate the franchises.

- Topic R: Payment of royalties and other fees by Meltzer San Antonio Restaurants, LP to Benihana National Corporation from the period of January 1, 2009 to the present.

- Topic S: Payment of royalties and other fees Meltzer/Austin Restaurant Corp. to Benihana National Corporation from the period of January 1, 2009 to the present.[12]

Further, the Court rejects Benihana's objection to Topic E ("Standards by which the franchise and corporate restaurants are judged and measured, and how the standards have been applied."), and Benihana is **ORDERED** to provide a representative on that topic.

With regard to topics A, I, and M, they are amended as follows:

- Topic A: From 2008 to ~~the present~~ **July 14, 2011**, the facts and/or circumstances for any sale, purchase, cancellation, transfer, or renewal of any Benihana franchised restaurants in the United States, including the amounts of any multipliers for any purchase or sale (including notes and negotiations regarding the same), the price(s) paid, whether the franchisee continued its relationship with Benihana.

- Topic I: The circumstances surrounding the four Benihana franchises that closed between 2010 to ~~2012~~ **July 14, 2011**.[13]

- Topic M: ~~Since January 1, 2009~~ **In the period January 1, 2009, through July 14, 2011**, the circumstances surrounding any Benihana restaurant managers that were replaced, terminated or voluntarily departed in relation to the manager's failure to maintain Benihana standards.

---

[12]Further, from the parties' representations, there is no dispute regarding testimony about the amount of damages sought by Benihana's counterclaim. Dkt. No. 143 at 5, n.2. Consequently, testimony on Topics D, P and Q appear to be unobjected to as well.

[13] Because the Court does not know when the four franchises referenced in this topic closed, the Court cannot be more specific than to say that if one or more of the closures referred to by Meltzer in Topic I occurred outside the newly amended time frame, then Meltzer is not permitted to inquire about the closure. Rather, Melter may only inquire into franchises which closed between January 1, 2010 through July 14, 2011.

The following topics are outside the permitted scope of discovery or otherwise not "reasonably calculated to lead to the discovery of admissible evidence," and these topics are stricken from Meltzer's notice:

- Topic F: All discounts, waivers, commissions, merchandise returns, gifts, signing bonuses, rebates, incentives, and the like that Benihana and/or any of its employees received from Edward Don & Co.

- Topic G: Any financial arrangements, investments, joint ventures, or contracts that Benihana has with Edward Don & Co.

- Topic H: The revenue projections in Benihana's 2012 proxy statement.

- Topic J: Benihana's form 10Ks for 2009 to 2012, including but not limited to discussions about "reserve areas."

- Topic K: Benihana's expansion plans in the southwestern United States, particularly in Texas.

- Topic L: Benihana's plans to sell Benihana labeled food items in outlets other than Benihana's Haru, sushi, and teppanyaki restaurants.

- Topic M: Since January 1, 2009, the circumstances surrounding any Benihana restaurant managers that were replaced, terminated or voluntarily departed in relation to the manager's failure to maintain Benihana standards.

- Topic N: Applications for franchises for teppanyaki restaurants and RA Sushi.
- Topic O: Enforcement of the standards of Benihana's 2006–2008 renovation program among the teppanyaki corporate and franchise restaurants.

- Topic T: The present amount incurred by Benihana National Corporation in attorney's fees and other recoverable costs of court related to Benihana National Corporation's efforts in prosecuting its breach of contract and other claims against by Meltzer San Antonio Restaurants, LP and/or Meltzer/Austin Restaurant Corp, and the payment of these fees and costs.

- Topic U: Fee arrangements, retention agreements, or agreements related to attorney's fees Benihana National Corporation incurred prosecuting its breach of contract and other claims against by Meltzer San Antonio Restaurants, LP and/or Meltzer/Austin Restaurant Corp.

•    Topic V: The Uniform Franchise Offering Circular of 1998, 1999, 2000, and 2012.

In summary, the Court **GRANTS** Meltzer's Motion to Compel 30(b)(6) Deposition, but limits the areas of testimony to those set forth above.  Benihana is **ORDERED** to designate, prepare, and present individuals who are able to provide testimony on the permitted topics.  *See, e.g.*, *Brazos River Auth.*, 469 F.3d at 433.

**C.    Counter-Defendants Meltzer San Antonio Restaurant's I, L.P., and Meltzer/Austin Restaurant Corporation's Motion to Quash (Dkt. No. 144)**

On May 9, 2013, the Parties notified the Court that they had come to an agreement with regard to the issues raised in the above-mentioned motion.  As such, there is no need for the Court to intervene on this matter.  Therefore, in accordance with the Joint Notice of Mootness filed by the Parties (Dkt. No. 158), the Court will **DENY AS MOOT** Counter-Defendants Meltzer San Antonio Restaurant's I, L.P., and Meltzer/Austin Restaurant Corporation's Motion to Quash (Dkt. No. 144).

### III.  SANCTIONS

Both Benihana and Meltzer move for sanctions related to their motions.  As mentioned previously, these motions are the seventh, eighth and ninth discovery motions in this case.  *See* Dkt. Nos. 84, 88, 105, 111, 116 and 120.  This order will be the fourth order issued in this case concerning discovery.  *See* Dkt. Nos. 108, 110 and 140.  In previous proceedings, the Court has repeatedly encouraged the Parties to resolve their discovery disputes without the Court's intervention.  Unfortunately, such cooperation has not occurred.

Both parties' actions at issue regarding these motions violated of the Federal Rules of Civil Procedure.  As detailed above, Meltzer submitted interrogatory answers which failed to provide sufficient responses to the questions proposed, despite being notified of the deficiencies by

Benihana.  Several of Meltzer's answers referred to his responses to other interrogatories without specifying which interrogatory answer was being incorporated.  Furthermore, for many of the interrogatories at issue, Meltzer did not identify which particular provisions of the Franchise Agreements were violated by Benihana and the particular misrepresentations and false information on which he bases his allegations.  Additionally, and perhaps more importantly, Meltzer included multiple topics in his Third Amended Notice for 30(b)(6) Deposition which were outside the scope of this Court's previous discovery order.  *See* Dkt. No. 140.  The Court's order was issued on March 26, 2013; Meltzer's Third Amended Notice for 30(b)(6) Deposition was sent to Benihana on April 4, 2013.  Meltzer has failed to provide a reasonable explanation for including topics in the 30(b)(6) notice specifically excluded by the Court's previous order concerning discovery, other than a reckless disregard of the Court's March 26th order.

Benihana's handling of Meltzer's 30(b)(6) notice was equally improper.  "When a Rule 30(b)(6) deposition notice references multiple topics, the party named in the deposition notice must either move for a protective order regarding each topic or designate a person to testify regarding each topic."  *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 142 (E.D. Tex. 2003); *see also* FED. R. CIV. P. 37 advisory committee's note (1970).  Here, instead of moving for a protective order or designating a person to testify on each topic, Benihana's counsel submitted a letter to Meltzer on April 24, 2013, one day prior to when the 30(b)(6) deposition was scheduled to take place, and after Plaintiffs' counsel had already traveled to Miami, indicating that it would not be offering anyone to respond to the majority of the proposed issues in the 30(b)(6) deposition.  Dkt. No. 151 at 2.  The Court was not apprised of Benihana's objections to Meltzer's Third Amended Notice for 30(b)(6) Deposition until May 9, 2013, after Meltzer had filed his Motion to Compel.

Dkt. No. 157.  Benihana's position that some of the proposed topics of testimony in Meltzer's 30(b)(6) Deposition Notice are objectionable does not excuse its failure to respond appropriately after being served with proper notice.  FED. R. CIV. P. 37(d)(2).  As the Court noted in a prior hearing, in the absence of an agreement between the parties on discovery matters, the Court has no choice but to enforce the Federal Rules of Civil Procedure, and it put the parties on notice at that hearing that was exactly what it would be doing moving forward.[14]  Benihana's actions plainly violated FED. R. CIV. P. 30(b)(6), and sanctions are therefore appropriate.

After considering counsels' actions in this instance as well as the history of this case, the Court finds it appropriate to sanction lead counsel for both parties. Counsel for both parties have not only expended a considerable amount of the Court's time and resources, but have also significantly increased the cost of litigating this dispute for their respective clients.  Accordingly, the Court will impose sanctions in the form of costs and attorneys' fees as provided under FED. R. CIV. P. 37(a)(5)(C) and 37(b)(2)(C) upon Meltzer's lead counsel (Rain Minns) and under FED. R. CIV. P. 37(d) for Benihana's lead counsel (Michael Joblove).  Rather than order the parties to provide billing statements and expense reports (which would only further increase the unnecessary costs caused by the discovery battles), the Court determines *sua sponte* that the appropriate costs and attorneys' fees incurred by the parties in seeking their respective relief is $2,000.  Accordingly, lead counsel for each party is hereby ordered to pay to the opposing party or parties the sum of $2,000 as sanctions.

---

[14]The Court had also explicitly warned in its previous order regarding discovery that "in the event further issues arise concerning the taking or scheduling of depositions, the Court will impose sanctions on the responsible parties."  Dkt. No. 140 at 2.

Finally, both Meltzer and Benihana are warned that the Court will impose additional sanctions if it is forced to address yet another discovery issue because the parties are unable to reach an agreement on matters that should not require expenditure of judicial time.

## IV.  CONCLUSION

In light of the foregoing discussion, it is **ORDERED** that Benihana's Motion to Compel Answers to Interrogatories (Dkt. No. 141) is **GRANTED IN PART** and **DENIED IN PART**. Meltzer is **ORDERED** to amend his interrogatory answers, as described in detail in the text, no later than June 24, 2013.

It is further **ORDERED** that Meltzer's Motion to Compel 30(b)(6) Deposition (Dkt. No. 143) is **GRANTED** in accordance with the limitations set forth above.  Benihana shall produce its representatives on the topics described above, in Austin, Texas, at a specific date and location to be decided upon among the parties, but in no event later than June 24, 2013.[15]

It is further **ORDERED** that Counter-Defendants Meltzer San Antonio Restaurant's I, L.P., and Meltzer/Austin Restaurant Corporation's Motion to Quash (Dkt. No. 144) is **DENIED AS MOOT**.

It is further **ORDERED** that lead counsel for both parties are sanctioned in the form of costs and attorneys' fees in the amount of **TWO THOUSAND DOLLARS ($2,000.00)** for violations of the Federal Rules of Civil Procedure, to be paid to the opposing party or parties.

---

[15]The Court declines to shift the costs for the court reporter and videographer for this deposition, as the delay in the deposition taking place had no impact on the costs of these fees, and Meltzer would have incurred them regardless of when or where the deposition took place.

FINALLY, it is **ORDERED** that both parties are hereby **PROHIBITED** from filing any further motions concerning discovery without prior approval from the Court.  Should additional discovery issues arise, the parties shall contact the Court informally and the Court will assist the parties to see if the dispute can be resolved without the filing of additional motions.

SIGNED this 10th day of June, 2013.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE