## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

MELTZER/AUSTIN RESTAURANT            §
CORPORATION, et al.,                 §
                                     §
V.                                   §          A-11-CV-542-AWA
                                     §
BENIHANA NATIONAL CORP.              §

## ORDER

Before the Court are Defendant Benihana National Corp.'s Motion for Attorneys' Fees and Costs (Dkt. No. 266); Plaintiff's Response (Dkt. No. 267); Benihana's Reply (Dkt. No. 269); Plaintiff's Surreply (Dkt. No. 270); and Benihana's Response to the Surreply (Dkt. No. 276). Also before the Court are Benihana's Supplemental Memorandum in Support of Its Right to Recover Attorneys' Fees and Costs Pursuant to Section 8.5 of the San Antonio Franchise Agreement (Dkt. No. 278) and Plaintiff's Response (Dkt. No. 279).

## I.  BACKGROUND

At issue is whether Defendant Benihana National Corporation is entitled to have Meltzer, former Benihana franchisees, pay the attorneys fees accrued over the course of this lengthy litigation. Prior to the events at issue in this case, Meltzer had owned and operated Benihana franchises in Austin and San Antonio. The parties' relationship soured, and in November, 2010, Benihana sent Meltzer notices of default, informing him that he had thirty days to correct violations of the Franchise Agreements or face termination of his franchise status. Meltzer failed to satisfy Benihana's demands, and on June 23, 2011, Benihana terminated Meltzer's franchise status.

That same day, Benihana filed suit in the Southern District of Florida. Benihana alleged that by continuing to operate after default, Meltzer San Antonio Restaurant I, L.P. and Meltzer/Austin Restaurant Corporation had breached their respective Franchise Agreements and infringed on

Benihana's trade marks and service marks.  Thereafter, on July 31, 2011, Meltzer Austin closed, and on August 3, 2011, Meltzer San Antonio closed.

The Meltzer companies filed their own suits in Texas: Meltzer San Antonio and Meltzer Austin brought an action in Travis County District Court, alleging breach of the Franchise Agreements and fraud; and Meltzer/Austin Restaurant II, LLC, another of Meltzer's restaurant entities, filed a separate action against Benihana in this Court, alleging fraud, negligent misrepresentation, and other causes of action relating to Meltzer Austin II's purchase of property for a new Benihana franchise.  The Texas state court case was removed to this Court, and Benihana's case in the Southern District of Florida was transferred to this district.  Eventually, Judge Lee Yeakel consolidated all three cases into the instant action.  The parties were then ordered to replead.  Plaintiffs filed several amended complaints, adding new parties and claims to the action.  Benihana also filed counterclaims alleging that Meltzer San Antonio and Meltzer Austin had breached the franchise agreements by failing to pay royalties.  (Benihana did not, however, refile the breach of the Franchise Agreement and trademark infringement claims it had filed in the Florida suit, likely because the closing of the Restaurants rendered those claims moot.)

After the claims were pared down through a number of motions, the case proceeded to trial.  After the close of Plaintiffs' case, the Court granted Benihana's Rule 50 Motion, entering judgment in Benihana's favor on all of Plaintiffs' claims, save Meltzer Austin and Meltzer San Antonio's breach of contract claims against Benihana.  Subsequently, Meltzer Austin withdrew all of its claims against Benihana, including its breach of contract claim.  Thus, the only claim that went to the jury was Meltzer San Antonio's breach of contract claim against Benihana, and the jury found that Benihana had not breached the franchise agreement.  The Court entered judgment in Benihana's

favor on the jury's verdict, and, pursuant to the parties' stipulation, entered judgment in Benihana's favor on its counterclaims for unpaid royalties.

Benihana then filed its motion for fees and costs. This Court held that Benihana was not entitled to recover its attorneys' fees from Meltzer under the indemnification clauses of either the Austin or San Antonio Franchise Agreements. It then ordered the parties to submit additional briefing on the limited issue of whether one provision of the San Antonio Agreement, requiring Meltzer to pay Benihana for costs incurred "in connection with the enforcement" of the agreement, extended to the attorneys fees at issue.

## II.  ANALYSIS

Benihana argues that Paragraph 8.5 of the San Antonio Agreement provides for the recovery of attorneys' fees. That provision states that:

> 8.5     Franchisee [Meltzer San Antonio] agrees to pay all costs and expenses (including, without limitation, reasonable attorneys' fees) incurred by Franchisor [Benihana] *in connection with the enforcement of this Article 8 or of Article 5* provided that the Franchisee is determined to be the breaching party.

*Id.* at 19 (emphasis added).  Article 8 of the San Antonio Agreement lays out the covenants of a Benihana franchisee to Benihana National Corporation. These range from broad requirements for restaurant management, hiring practices, and finances, to the provision stated above. Article 5 of the San Antonio Agreement describes obligations related to the use of Benihana's service marks, trade names, and confidential information.

This Court has already held that Paragraph 8.5 does not apply to Benihana's counterclaim for unpaid royalties—royalty payments are covered by Article 3 of the agreement, not Articles 8 or 5. At issue is whether the provision applies to two other portions of this litigation. First, Benihana's original Florida case alleged that "by continuing to operate the Restaurants after the Franchise

3

Agreements were terminated and refusing to comply with the post-termination obligations contained in the Franchise Agreement," Meltzer San Antonio had breached the Franchise Agreement. Dkt. No. 7-2 at 13. To the extent Benihana brought that action "in connection with the enforcement" of Article 5 of the San Antonio Franchise Agreement (relating to use of tradenames and service marks), it would appear that Section 8.5 would permit Benihana to recover its fees expended in that effort. Second, if Benihana's *defense* of Meltzer San Antonio's suit is understood as having been "in connection with the enforcement" of the San Antonio Agreement, then 8.5 might permit recovery of attorney's fees more broadly. In both instances, then, the award of fees turns on the definition of "enforcement" under the agreement. The agreement does not define the term.

Other courts, though, when faced with similar language, have held that, absent other provisions, defending a breach of contract claim did not constitute "enforcement" of the contract. While none are binding on this Court, they are nonetheless instructive. An appellate court in Illinois recently faced a provision similar to the one at issue here in a case regarding breach of a lease agreement. *Housing Auth. Of Champaign Cnty. v. Lyles*, 395 Ill.App.3d 1036 (Ill.App.Ct. 2009). The agreement stated:

> In the event one party to this lease defaults in fulfilling any of the provisions of this lease, the non-defaulting party may recover all costs and reasonable attorney fees incurred in enforcing this lease, whether or not suit shall be required.

*Id.* at 1039. To determine how to construe the provision, the court looked to the dictionary definition of the word "enforce:"

> The American Heritage Dictionary defines "enforce" as "1. To compel observance of or obedience to. 2. To compel. 3. To give force to; reinforce." American Heritage Dictionary 610 (3rd ed.1992). Black's Law Dictionary defines "enforce" to mean, "To put into execution; to cause to take effect; to make effective; as, to enforce a particular law, a writ, a judgment, or the collection of a debt or fine; to compel obedience to." Black's Law Dictionary 528 (6th ed.1990).

4

> Applying these common definitions to the language of the lease, this court finds as a matter of law that the lessor or lessee would be entitled to attorney fees only if that party was suing to compel or make effective the covenants of the lease. In this case, defendant was defending against plaintiff's claim that she breached the terms of the lease "as a result of keeping her unit in an unsanitary and unsafe condition." Defendant never sued to enforce any covenant of the lease. Defendant was not enforcing anything, but merely defending against the charge that she had breached the lease. We will not "torture ordinary words until they confess to ambiguity."

*Id*. at 1039-1040. A Utah court faced a similar provision and came to the same conclusion:

> The provision in the earnest money agreement regarding attorney fees is not comprehensive but is somewhat limited in scope. With our emphasis, it provided: "If either party fails [to perform], he agrees to pay all expenses *of enforcing this agreement*, or of any right arising out of the breach thereof, including a reasonable attorney's fee." Smith took an entirely defensive posture. It was not enforcing any right arising under the agreement or arising from a breach thereof. On the contrary, its position at trial was that there was no viable contract left to enforce. While Smith would surely be entitled to attorney fees under the more typical provision awarding fees to the prevailing party, it is not entitled to attorney fees under the provision at issue.

*Carr v. Enoch Smith Co.*, 781 P.2d 1292, 1296 (Utah Ct. App. 1989) (internal citations omitted).

Notably, when courts have held that such provisions extend to the defense of an action, they have relied on other, broader, and more inclusive language in the relevant agreements. In an Illinois federal case, for example, the agreement stated that a customer would pay attorneys' fees incurred "in connection with the preparation, execution, administration, collection, enforcement, protection, waiver or amendment" of an agreement. *Bank of America, N.A. v. Oberman, Tivoli & Pickert, Inc.*, 12 F.Supp.3d 1092 (N.D.Ill. Jan. 22, 2014). The court held that defending a suit, while not "enforcement" of the agreement, was "protection" of the agreement, and accordingly an award of fees was appropriate. *Id*. at 1103.

Drafters, then, are capable of writing clauses awarding attorneys' fees in a variety of circumstances. But absent such additional language, courts generally do not read "enforcement" to

5

mean anything more than "to enforce."  Thus, a district judge in the Middle District of Florida held

as such when she considered an agreement between a golf club and its members.  The agreement

read:

> If the Club is required to turn a Member's account over to a collection agency or
> institute legal action to collect any dues or charges owed by a Member, or to enforce
> any provision of these Bylaws against a Member, the Member agrees he or she shall
> be responsible for all costs of collection, reasonable attorneys' fees incurred by the
> Club, and court costs.

*Gadsby v. Am. Golf Corp. of California*, 2014 WL 5473555 at *5 (M.D. Fla. Oct. 28, 2014).  The

Court held that the provision did not extend to the Club's defense of "a suit by former members to

enforce a different provision of the Bylaws." *Id*. at *10.  It noted that the Club "would be entitled

to recover fees under an attorneys' fees provision using more standard language; the Club could

have included in Section 11.9 broader language clearly entitling it to recover attorneys' fees in a

situation as it now faces, but it did not." *Id.* at *8.

The San Antonio Agreement only requires Meltzer to pay attorneys' fees incurred in

connection with the *enforcement* of specific parts of the Agreement.  "Enforcement" means "the act

or process of compelling compliance with a law, mandate, command, decree, or agreement."

*Black's Law Dictionary*, 10th Ed., p. 645.  In this context, "enforcement" means proactive steps

taken to ensure that Meltzer complied with its obligations under the Agreement.  It does not mean

Benihana's defense of Meltzer's suit related to the Agreement. If Benihana had wanted to be

reimbursed for attorneys' fees incurred defending an action brought by Meltzer or any other

franchisee, it could have included such language in its agreements.  It did not.  Accordingly,

Benihana may not recover attorneys' fees incurred defending itself against Meltzer's actions.

Benihana may, however, recover attorneys' fees incurred in preparing for and bringing its initial suit against Meltzer in the Southern District of Florida. In that action Benihana alleged that Meltzer had breached the Agreement by continuing to operate the restaurant after the Franchise Agreement had been terminated. Benihana had terminated Meltzer's Franchise Agreement because of violations of Section 8.1 of the Agreement. It also alleged that its continued use of Benihana's marks and other intellectual property post-termination violated Section 5.5 of the Agreement. This action was clearly taken "in connection with the enforcement" of Article 5 of the San Antonio Agreement. Further, the Court finds that Meltzer was the breaching party in these actions. Accordingly, Benihana is entitled to recover from Meltzer its costs and expenses incurred preparing for and bringing that suit up through the time that Meltzer closed the San Antonio restaurant on August 3, 2011.

As noted in previous rulings, because Section 8.5 is only contained in the San Antonio Agreement, the award is limited to fees Benihana incurred enforcing the San Antonio Agreement only. As such, and in accordance with the local rules, counsel for the parties are ordered to meet and confer to determine the correct amount of fees Benihana is entitled to for enforcing its rights through the Florida action against Meltzer San Antonio. W.D. Tex. Civ. R. 7-3(j)(1).

### III. CONCLUSION

Based upon the foregoing and this Court's previous rulings on the motions, Benihana's Motion for Attorneys' Fees is **GRANTED** in part and **DENIED** in part. The parties are **ORDERED** to meet and confer to determine the correct amount of fees incurred by Benihana in the Florida action against Meltzer San Antonio only, and submit that application to the Court, in accordance with Local Rule 7-3(j)(1).

SIGNED this 15th day of December, 2014.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE